original

ORIGINAL

DS127136

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TX
FILED

2020 OCT -9  AM II: 16

DEPUTY CLERK_____  et

LINDSEY KENT SPRINGER, 02580-063,
Plaintiff's Name and ID number

2626 E. 72nd St., Tulsa, Oklahoma 74136,
Place of Confinement

**3 - 2 0 CV 3 0 8 8 - B**

v.

Case No. _____
       (Clerk will assign number)

UNITED STATES, 10th and Constitution
Ave., N.W., Washington, D.C. 20530,
**First Defendant's Name and Address**

Mark Christian, 2909 Lucas Dr. Apt. #
203, Dallas, Texas 75219,
**Second Defendant's Name and Address**

**JURY TRIAL DEMANDED**

Ernesto Rosales, 1400 Dale Bumpers Road,
Forrest City, Arkansas 75219,
**Third Defendant's Name and Address**

Bureau of Prisons, 320 First Street N.W.,
Washington, D.C. 20534,
**Fourth Defendant's Name and Address**

**COMPLAINT**

Plaintiff Lindsey Kent Springer files this Complaint under Bivens v. Six Unknown Federal

Narcotics Agents, 403 U.S. 388, (1971)("Bivens"), the Federal Tort Claims Act("FTCA"), and the

Freedom of Information Act ("FOIA"), regarding Plaintiff's expose to asbestos and mold during

his incarceration at Seagoville FCI Satellite Prison Camp.

**JURISDICTION AND VENUE**

Jurisdiction for Plaintiff's Bivens Claims is authorized pursuant to 28 U.S.C Section 1331.

Jurisdiction for Plaintiff's FTCA Claim is authorized pursuant to 28 U.S.C. Section 1346(b). Jur-

isdiction for Plaintiff's FOIA Claim is authorized pursuant to 5 U.S.C. Sections 552(a)(4)(B), 701

1

et seq., and 28 U.S.C. Sections 1331 and 1361.

Venue over Plaintiff's Bivens Claims is authorized pursuant to 28 U.S.C. Sections 1391(b)(1), (2), and (3). Venue over Plaintiff's Tort Claims is authorized pursuant to 28 U.S.C. Section 1402(b).

Venue over Plaintiff's FOIA Claims is authorized pursuant to 5 U.S.C. Section 552(a)(4)(B).

## I. PREVIOUS LAWSUITS:

A. Have you filed any other lawsuits in state or federal court relating to your imprisonment?
__X__ Yes ____ No

B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: June, 2019

2. Parties to previous lawsuit:

Plaintiff(s) ____ Lindsey Kent Springer

Defendant(s) ____ M. Underwood, Warden (never required to respond)

3. Court:(If federal, name the district; if state, name the county.)
____ United States District Court for the Northern District of Oklahoma

4. Cause Number: ____ 19-CV-1433-S

5. Name of judge to whom case was assigned: ____ Karen G. Scholer

6. Disposition: (Was the case dismissed, appealed, still pending?)
____ Case was dismissed directing Plaintiff to file Bivens Action. Plaintiff appealed arguing Habeas Corpus was proper use of procedure to reach release and medical attention. Appeal was dismissed.

7. Approximate date of disposition: ____ July, 2019 in 19-CV-1433-S and July 20, 2010 in 19-10977.

1. Approximate date of disposition: ____ December, 2013

2. Parties to previous lawsuit:
Plaintiff(s) ____ Lindsey Kent Springer
Defendant(s) ____ J. Fox, Warden

3. Court:(If federal, name the district; if state, name the county.)
____ United States District Court for the Western District of Oklahoma

4. Cause Number:_____13-CV-1326-W _

5. Name of judge to who case was assigned: ___Lee R. West_

6. Disposition: (Was the case dismissed, appealed, still pending). ___Case was dismissed without prejudice_____

7. Approximate date of disposition:___February 2, 2015_____

II.  PLACE OF PRESENT CONFINEMENT:  __2626 E. 72nd St., Tulsa, Oklahoma 74136_____

III.  EXHAUSTION OF GRIEVANCE PROCEDURES:

HAVE YOU EXHAUSTED ALL STEPS OF THE INSTITUTIONAL GRIEVANCE PROCEDURE?  _X_ . Yes ___ No.

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

### LIST OF ATTACHMENTS

Exhibit 1 — Danger Warning of Cancer Causing Asbestos found present;

Exhibit 2 — BP-11 dated March 12, 2019;

Exhibit 3 — Memorandum to Plaintiff involving finding of Asbestos present;

Exhibit 4 — BP-9 dated November 20, 2018

Exhibit 5 — BP-11 denial dated April 9, 2019;

Exhibit 6 — Plaintiff's Federal Tort Claim;

Exhibit 7 — United States Denial of Federal Tort Claim;

Exhibit 8 — Plaintiff's FOIA request and response letter from BOP;

IV.  PARTIES TO THIS SUIT:

A. Name and address of plaintiff:  __Lindsey Kent Springer, 2626 E. 72nd St., Tulsa, Oklahoma 74136_____

B. Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant # 1:  United States, 10th and Constitution Ave., N.W., Washington D.C. 20530         .

Briefly describe the act(s) or omission(s) of this defendant which you claim harmed you.  As more fully described in Plaintiff's Statement of Claims, the United States exposed Plaintiff  to more than 500 days of Airborne, Friable, Asbestos and Mold, during Plaintiff's serving of

3

his Federal Sentence at Seagoville FCI's Satellite Camp.

Defendant # 2:  Mark Christian, Food and Drug Administration, place
of employment unknown, 2909 Lucas Dr. Apt. # 203, Dallas, Texas
75219 on information

Briefly describe the act(s) or ommission(s) of this defendant which
you claim harmed you.  As more fully described in Plaintiff's
Statement of Claims, Mark Christian acted deliberately indifferent
to Plaintiff's serious safety and medical needs, and in violation
of Plaintiff's Eighth Amendment Rights, when he subjected and
exposed Plaintiff to more than 365 days of Airborne, Friable,
Cancer Causing Asbestos and Breath-taking, Asthma Inducing, Mold,
during Plaintiff's serving his Federal Sentence at Seagoville
FCI's Satellite Camp.

Defendant # 3: Ernesto Rosales, Assistant Warden at Forrest City,
FCI, 1400 Dale Bumpers Road, Forrest City, Arkansas 75219

Briefly describe the act(s) or ommission(s) of this defendant which
you claim harmed you. As more fully described in Plaintiff's
Statement of Claims, Ernesto Rosales acted deliberately indifferent
to Plaintiff's serious safety and medical needs, and in violation
of Plaintiff's Eighth Amendment Rights, when he subjected and
exposed Plaintiff to more than 365 days of Airborne, Friable,
Cancer Causing Asbestos and Breath-taking, Asthma Inducing, Mold,
during Plaintiff's serving his Federal Sentence at Seagoville FCI's
Satellite Camp.

Defendant # 4: Bureua of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534

Briefly describe the act(s) or ommission(s) of this defendant which
you claim harmed you. As more fully described in Plaintiff's
Statement of Claims, the Bureau of Prisons, an agency under the
Freedom of Information Act, failed to adequately uncover all
records and documents requested by Plaintiff under the FOIA
involving the existence and abatement of Asbestos and Mold at
Seagoville FCI within the time allowed by Federal Law.

4

V.  STATEMENT OF CLAIM:

## Background

A.  Plaintiff, between March 16, 2016, through September 12, 2019, served his Federal Sentence at the Federal Correctional Institution located at 2113 N. HWY 175, Seagoville, Texas 75159.

B.  FCI Seagoville has been designated as a Historical Landmark based upon it being built in the late 1930s and most famously used to imprison Japanese Americans during World War II.

C.  The United States and its officers and employees are to presume, according to 29 CFR §§ 1910.1001(a), (b), and (j)(2), that buildings constructed and built prior to 1980 were constructed and built using Asbestos Containing Material ("ACM").

D.  FCI Seagoville encompasses a Satellite Camp housing approximately 160 Federal Prisoners as well as a Powerhouse, Facilities, and a Warehouse shared by both the Food Service Department and Trust Fund Commissary and Laundry Departments, that previously had been found to contain Cancer Causing Asbestos.

E.  Inside the Warehouse there exists Two storage rooms that, since the late 1930s to present day, have been used as (i) a morgue, (ii) freezers storing food that feeds the federal inmate population at FCI Seagoville, (iii) dry storage rooms storing food that feeds the same inmate population, toilet paper for the same inmate population, sleeping mattresses for distribution to the same inmate population, washers and dryers for use by the camp inmates (new and those rebuilt by Springer personally), New Executive Staff and Medical Staff furniture, and dangerous designated chemicals used to keep the entire prison clean ("Storage 1" and "Storage 2").

F.  Plaintiff's first job assignment was to the Laundry Department located above the Power Plant and connected to the Warehouse beginning April 1, 2016.

5

G.  Plaintiff's general job description in Laundry was to repair and maintain washers and dryers both institutional and those assigned to the Satellite Camp as well as the Staff Training Center.

H.  The Satellite Camp is a single building which warehouses 160 Federal Prisoners and contains Two large dorm style sleeping chambers, Two designated bathrooms each containing 10 Showers, 8 sinks, 4 standing urinals, and 4 sitting toilets, a cafeteria approved to seat 48 persons at one time, a large TV Room which doubles as the visitation rooms and Chapel on designated days.

I.  On or about July 1, 2016, Plaintiff was relocated from the Laundry Department area and into a third Storage Room adjacent to Storage 2 ("Storage 3").

J.  From on or about July 1, 2016 to November 1, 2016, Plaintiff performed many types of repairs on many different items for the BOP including (i) the repairing of microwaives, (ii) repairing of golf carts designated to the Warehouse for use, (iii) repairing of vehicles designated to the Warehouse, and (iv) repairing of furniture.

K.  On or about November 1, 2016, Plaintiff was promoted to the position of Warehouse Clerk with Plaintiff's desk or office station located just outside of Warehouse Staff's Office.

L.  Part of Plaintiff's job description was to move furniture, toilet paper, mattresses, lockers, receive and distribute all property at FCI Seagoville coming into the Warehouse, as well as send from the Warehouse certain property designated as leaving FCI Seagoville from the Warehouse.

M.  Another aspect of Plaintiff's job was to keep the overall appearance of the Warehouse clean and in as much order as possible under Warehouse type conditions.

N.  Plaintiff usually spent from 2:30 PM to 3:30 PM every day sweeping the

6

front dock of the Warehouse and Breeze-way areas just outside both Storage 1, Storage 2, and Storage 3.

O.  As of November 1, 2016, both Storage 1 and 2 were controlled by the Food Service Department.

P.  On or about April 1, 2017, the Freezer system in Storage 1 went down and the decision was made by Assistant Food Service Administrator Ms. White to convert Storage 1 into a dry storage area for Food Service.

Q.  The contents of Storage 1 were moved into Storage 2 (which Freezer system remained functioning) and mobile freezers positioned outside and around the Warehouse and Facilities.

R.  On or about April 1, 2017, Plaintiff was directed by Commissary Warehouse Supervisor Robert Freeman ("Freeman") to tear down and remove the shelf system in Storage 1, clean it thoroughly, and re-assemble the shelf system in the Laundry Department.

S.  On or about April 1, 2017, Plaintiff, along with other Federal Prisoners, dismantled Storage 1's shelf system, and Plaintiff alone totally cleaned all the foreign substances covering the entire shelf system resulting in the other Federal Prisoners' reassembling the shelf system inside the Laundry Department.

T.  The substances covering the entire shelf system, as well as the entire floor not covered by the shelf system, were dusty, dry, black chunks, and black smaller substances.

U.  Once the shelf system was removed, Plaintiff and the other Federal Prisoners' cleaned the entirety of Storage 1 of all dusty, dry, black chunks, and black smaller substances scattered throughout the room.

V.  At no time during the shelf removal or cleaning of Storage 1 did Plaintiff, or any other federal prisoners, receive instruction to wear protective coverings and gear or informed by Warehouse Staff that the substance being cle-

7

aned contained Cancer Causing Asbestos or Breath-Taking Mold.

W.  On or about May 1, 2017, Ms. White began to use Storage 1 as a dry
storage room for inmate food used to feed the entire inmate population.

X.  At this point, Storage 2 remains a freezer controlled by the Food Ser-
vice Department.

Y.  Once Ms. White visually could see the inmate food was being covered
(outer surfaces to card board boxes) with a fine dusty substance and chunks of
a black substance, apparent to all the source of which was from the ceiling and
walls therein, Ms. White decided to cease using Storage 1 to store inmate food
products converting Storage1 into a Chemical Storage room used by Food Service.

Z.  On or about June 1, 2017, Plaintiff assisted Ms. White in removing Saf-
ety notices from the Second Floor of Food Service Warehouse, where the Food Ser-
vice Chemicals had been stored, and moving such notices inside Storage 1 mount-
ing such notices onto the Wall in Storage 1.

AA.  At this point, Storage 1 and 2 had solid doors (apprx. 8 inches thick
with built in defrost mechanism) that contained a latch, lock, and seal.

BB.  On or about June 1, 2017, Plaintiff began to suffer upper respratory
breathing issues, along with other inmates, including excessive nose bleeding,
being informed by Nurse Mohon the bleeding was caused by ceder pollen which
had previously resulted in the Medical Department at FCI Seagoville to prescr-
ibe Fluticasone Propionate.

CC.  Several Federal Prisoners working in Commissary Warehouse were also
treated with the same type of condition and prescribed the same Fluticasone
Propionate.

DD.  At this point, Plaintiff was unaware that Storage 1 had an excessive
mold problem nor that the substances Plaintiff was handling on an almost daily
basis was Cancer Causing Asbestos.

8

EE.  On or about July 1, 2017, and in preparation for the Food Service's annual inspection, Food Service Administrator Damon Lynn made the decision that both Storage 1 and 2 would not pass inspection, abandoning both Storage 1 and 2, and removed Food Service Department locks from both doors to both rooms.

FF.  Both Storage 1 and 2 had a history of leaking water out from under both solid doors, and as of July 1, 2017, Storage 2 (freezer system still functioning) daily leaked water out from under its door in such a magnitude that repairing it before inspection was not feasable (Storage 1 was already dry storage only).

GG.  Plaintiff cleaned the leaked water out front of Storage 2 on multiple occassions simply due to the volume of freight moving in from the back dock that would need travel through the water tracking that water and its contents into the Commissary parts of the Warehouse.

HH.  Cleaning the water from the floor was a safety issue and required Plaintiff's constant attention at this point.

II.  On or about July 1, 2017, Mr. Lynn emailed Trust Fund Administrator Bruce Padgett that the Food Service Department would no longer be responsible for anything involving Storage 1 and 2.

JJ.  At some point between July 1, 2017, and July 31, 2017, the freezer system in Storage 2 broke down and its contents were moved into a mobile freezer trailer outside the Warehouse itself.

KK.  At one point, the Food Service Department utilized as much as 10 mobile trailers to store inmate food products.

LL.  Beginning on or about August 1, 2017, Plaintiff was instructed by Mr. Freeman, at the direction of Mr. Padgett, that both Storage 1 and 2 were now the responsibility of Commissary Warehouse and that Plaintiff was now fully responsible for the cleaning and maintaining both storage rooms.

MM.  Plaintiff and other Federal Prisoners cleaned, scrubbed, and used high

9

pressure water to wash out both Storage 1 and 2.

NN.   As of August 1, 2017, Plaintiff assisted in filling both Storage 1 and 2 with property belonging to the Bureau of Prison ("BOP") at FCI Seagoville for use and distribution to the federal inmate population or Executive and Medical staff.

OO.   Storage 1 was now used to store in excess of 100 boxes of toilet paper for distribution to the Satellite Camp and more than 100 mattresses for use and distribution to the FCI Seagoville inmate population.

PP.   Storage 2 was now used to store numerous washers and dryers for which Plaintiff had mostly rebuilt, including 3 or 4 in-the-box machines, Executive and Medical staff furniture, and at least 96 inmate lockers stacked on top of wood pallets.

QQ.   On numerous occasions, Plaintiff would spend time, and sometimes with other federal prisoners, cleaning both rooms when either Storage 1 and 2 were depleted of their contents making cleaning more accessible.

RR.   As of August 1, 2017, Plaintiff was instructed by Mr. Freeman to keep both doors to Storage 1 and 2 closed when not moving property of the prison in or out of those two rooms.

SS.   By on or about September 1, 2017, Mr. Freeman emails Executive Staff and Enviromental and Safety Compliance Administrator Mark Christian about the continued falling substances in both Storage 1 and 2 for which Plaintiff was constantly having to clean off of all BOP property belonging to FCI Seagoville, the floors, as well as regarding the very strong odor present inside both rooms.

TT.   It was, at this point, routine for Plaintiff and other federal prisoners to clean off from all property being removed from Storage 2 the dusty and black matter that had fallen from the walls and ceiling before distribution to its final destination.

10

UU.  On or about September 23, 2017, Assistant Warden Rosales, Facilities Supervisor S. Jefferson, Camp Counselor Mike Shelp, and Mr. Christian, visited the Warehouse together to view the substance falling from the walls and ceilings in both Storage 1 and 2, as well as the odor.

VV.  Mr. Christian decided to test the black substance in both rooms and determined that, on or about October 20, 2017, the substance falling in both Storage 1 and 2 was mildew only.

WW.  On or about October 27, 2017, along with federal prisoner Hooper and Perpich, Mr. Christian appeared at the Warehouse in a full body suit and with respratory protection, to spray some soapy substance in both Storage 1 and 2.

XX.  Prior to spraying, Mr. Christian had Plaintiff and other federal prisoners remove all property from both Storage 1 and 2 so Mr. Christian could spray both rooms for mildew.

YY.  Upon completion, and a drying out period, Plaintiff was directed by Mr. Freeman to clean off all property that had been removed from Storage 1 and 2 before returning that property to its designated storage room.

ZZ.  On or about November 15, 2017, Mr. Freeman instructed Plaintiff to remove both solid doors from Storage 1 and 2 in effort to combat the strong odor continuing to exist inside both rooms after Mr. Christian's treatment.

AAA.  Once Plaintiff removed both doors, federal prisoner James Books used the Forklift to place both doors in FCI Seagoville's bone yard.

BBB.  As of November 15, 2017, both Storage 1 and 2 were completely open and exposed to the elements of the weather due to their position in the breeze-way part of the Warehouse.

CCC.  Between on or about December 15, 2017, through on or about January 15, 2018, Mr. Padget requested Kenny Goen to manufacture TWO gate style doors for Storage 1 and 2 allowing property to remain secure therein while allowing the

air from inside both Storage rooms to filter out into the Breeze-way.

DDD.  Both Storage 1 and Storage 2 received their new gate style doors immediately.

EEE.  Continuing from December 15, 2017, through September 15, 2018, Plaintiff continued to utilize and frequent both Storage 1 and 2, as a routine part of Plaintiff's ongoing job duties, continuing to clean, sweap, and breath in dust covering the property, including the black substances present therein.

FFF.  Needless-to-say, the new gate doors did not stop the strong odor.

GGG.  Also, the dust covering the property and the black chunks increased in volume only now both were compiling outside both Storage 1 and 2 and into the air of the Breeze-way and the floor.

HHH.  During the winter months of 2017-2018, the Breeze-way doors remained closed allowing the heat to remain inside the Warehouse as much as possible and circulating the air moving out of Storage 1 and 2 throughout the area surrounding both rooms.

III.  At all times, Plaintiff remained on "cronic care" for upper respiratory issues to prevent complete closure of Plaintiff's nasal air-way and to prevent nose bleeding.

JJJ.  On or about July 1, 2018, Mr. Christian left employment at FCI Seagoville for another job within the Federal Government, on information and belief.

KKK.  On or about July 1, 2018, Mr. Rosales tranferred to FCI Forrest City, Arkansas, on information and belief.

LLL.  On or about July 1, 2018, Ms. White transferred to FCI Coleman, Florida at its Food Service Administrator, on information and belief.

MMM.  On or about July 1, 2018, Mr. Padgett, Mr. Lynn, and Commissary Staff B. Roper, were all informing Plaintiff they were experiencing significant upper respiratory breathing issues stemming from their exposure to the air at the

12

Warehouse.

NNN.  On or about July 20, 2018, Chris Rees reported for duty as FCI Sea-
goville's Enviromental and Safety Compliance Administrator.

OOO.  On or about July 24, 2018, Mr. Rees visited the Warehouse for the first
time introducing himself to Plaintiff and Mr. Freeman, as well as other Ware-
house staff and federal prisoners.

PPP.  On another visit in early September, 2018, Mr. Freeman introduced Mr.
Rees to Storage 1 and 2 causing Mr. Rees to orally announce he would have the
falling substances from the walls and ceilings in Storage 1 and 2 tested imm-
ediately rejecting Mr. Christian's mildew prognosis.

QQQ.  On or about October 9, 2018, Mr. Rees appeared at the Warehouse with an
outside company representative that tested the substances falling in both Sto-
rage 1 and 2 from the walls and ceilings.

RRR.  On or about October 10, 2018, Commissary Staff R. Fulce instructed Pla-
intiff to place Two 8.5 by 11 inch signs on both Storage 1 and 2 gate style
doors stating neither staff or federal prisoners were to enter either room.

SSS.  On October 11, 2018, Mr. Rees had Plaintiff, with the assistance of
another federal prisoner, cover both Storage 1 and 2 doorways with a thick but
otherwise clear plastic and duck tape, posting Two RED signs that read:

>  "Danger, Asbestos, May Cause Cancer, Cause Damage to Lungs, Authorized
>  Personnel only. 29 CFR [1910-1001(j)(4)(i)]. C. Rees, Safety Manager Ext.
>  4431."

See Exhibit  1 .

TTT.  On October 11, 2018, Mr. Rees instructed Plaintiff to personally main-
tain the duck tape seal on Storage 1 and 2 and provided Plaintiff with one roll
of duck tape.

UUU.  On or about October 15, 2018, Plaintiff was informed by Mr. Freeman
that he would be departing the Warehouse for a new administrative job at FCI

Seagoville.

VVV. On October 18, 2018, Mr. Rees explained to Plaintiff during the first post sealing air sample testing of the Warehouse, including Storage 1 and 2, that the percentage of Cancer Causing Asbestos found in both Storage 1 and 2 was 10% and the strong odor came from a major case of mold in both rooms.

WWW. Mr. Rees explained the percentage of Asbestos, and the finding of the presence of Mold, in the presence of Mr. Freeman and the other federal prisoners.

XXX. On October 18, 2018, the person conducting the air-quality test confirmed the finding of the 10% Asbestos and Mold during the October 9, 2018 testing of both Storage 1 and 2.

YYY. On October 22, 2018, another outside Company, headed by a former BOP employee on information and belief, appeared to take a second air-quality sample.

ZZZ. Commissary Warehouse Staff Casey Herring informed Plaintiff that the air-quality testing was conducted after water was sprayed in the testing area.

AAAA. On October 22, 2018, after the other Company left the Warehouse, Mr. Rees instructed Plaintiff, in the presence of Mr. Padgett, to replace Plaintiffs cloths and bedding due to Plaintiff's extended exposure to the 10% Asbestos and Mold and directed the other federal prisoners' exposed to do the same.

BBBB. At the same time, and in the same coversation between Plaintiff, Mr. Rees and Mr. Padgett, Mr. Rees directed Plaintiff and Mr. Padgett that all toilet paper, mattresses, washers and dryers, and all cardboard boxes inside both Storage 1 and 2 would need to be abated and destroyed due to Asbestos contamination.

CCCC. On October 29, 2018, Plaintiff, after several attempts to obtain administrative remedy forms went unresponded to by Warden M. Underwood and

14

her administration, submitted his formal request for administrative remedy from Plaintiff's exposure to Cancer Causing Asbestos and Breath-Taking and Asthma Inducing Mold. See Exhibit 2 .

DDDD.  On October 31, 2018, Mr. Rees issued a Memorandum to Plaintiff reporting the finding of Asbestos in both Storage 1 and 2. See Exhibit 3 .

EEEE.  On or about November 8, 2018, Mr. Lynn informed Mr. Padgett that Mr. Lynn was now being treated for asthma.

FFFF.  On November 9, 2018, Plaintiff visited sick call seeking medical treatment due to Plaintiff's extended exposure to Cancer Causing Asbestos and Breath-Taking and Asthma Inducing Mold. See Exhibit 4 .

GGGG.  During Plaintiff's November 9, 2018 sick call visit, Plaintiff was informed, along with other federal prisoners so exposed, that Dr. Holla would communicate with Nurse Mohon what treatment was recommended by the CDC by November 13, 2018. See Exhibit 4 .

HHHH.  On November 20, 2018, after it became apparent Dr. Holla was not proceeding as Nurse Mohon had indicated with medical treatment, Plaintiff submitted to Warden Underwood his request for medical treatment due to Plaintiff's exposure to Cancer Causing Asbestos and Breath-Taking and Asthma Inducing Mold. See Exhibit 4 .

IIII.  On December 5, 2018, Plaintiff submitted a BP-10 to the Regional Director's Office based upon Warden Underwood's silence and lack of response to Plaintiff's October 29, 2018 BP-9.

JJJJ.  On December 10, 2018, Plaintiff was reassigned from the Warehouse and sent by daily furlough to the BOP's National facilities located in Grand Prairie, Texas five days per week.

KKKK.  On December 10, 2018, the Regional Director's Office received Plaintiff's BP-10 based upon the lack of response and silence from Warden Underwood.

15

LLLL. On December 11, 2018, Warden Underwood's Office at Seagoville decided to index Plaintiff's October 29, 2018 BP-9. See Exhibit  2  .

MMMM. On December 13, 2018, the Regional Director's Office issued Plaintiff a rejection letter to Plaintiff's December 5, 2018 BP-10 stating Plaintiff did not attach the Warden's Response and simultaneously ordering the Warden to Respond to Plaintiff's October 29, 2018 BP-9 by December 31, 2018.

NNNN. On December 26, 2018, Warden Underwood denied Plaintiff's October 29,. 2018 BP-9's relief relying upon the possibility Plaintiff was not exposed to friable Asbestos mentioning nothing about the Mold exposure.

OOOO. On January 7, 2019, Plaintiff submitted a BP-11 to the Central Office in Washington D.C. from the December 13, 2018 rejection letter by the Regional Director's Office based upon the silence of the Warden more than 50 days and showing there is no administrative remedy available at FCI Seagoville that is in accordance with the Attorney General's regulations.

PPPP. On January 9, 2019, out of an abundance of caution, Plaintiff submitted a BP-10 to the Regional Director from the Warden's December 26, 2018 out-of-time denial showing her reliance on the the post-sealing air quality reports was erroneous where the more than 500 days of Plaintiff's exposure to Asbestos and Mold was not replicated during the air sampling.

QQQQ. On February 15, 2019, the General Counsel's Office in Washington D.C. rejected Plaintiff's January 7, 2019 BP-11 on grounds Plaintiff could appeal the Regional Director's decision pending on Plaintiff's Second BP-10.

16

RRRR.  On or about February 20, 2019, Plaintiff was informed by inmates working at the Grand Prairie Cadre Unit, who were recently deposed, that Regional Director John Caraway was no longer present in the Regional Director's Office at Grand Prairie and had resigned as of February 28, 2019 due to Mr. Caraway's causing Warden Underwood to send by furlough federal prisoners from FCI Seagoville's Satellite Camp to work several days at Mr. Caraway's Church paying the federal prisoner's $ 4.00 per day.

SSSS.  On February 22, 2019, the Staff in the Regional Director's Office denied Plaintiff's January 9, 2019 BP-10 for the reasons given by Warden Underwood in her out-of-time December 26, 2018 response denying Plaintiff's October 29, 2018 BP-9. See Exhibit  2 .

TTTT.  On March 12, 2019, Plaintiff submitted his BP-11 to the Central Office in Washington D.C. from the Regional Director's Office Staff's February 22, 2019 response denying Plaintiff's January 9, 2019 BP-10. See Exhibit  2 .

UUUU.  On April 9, 2019, the Central Office in Washington D.C. denied Plaintiff's March 12, 2019 BP-11 for the reasons given by the Regional Director's Office Staff's February 22, 2019 denial. See Exhibit  5 .

VVVV.  Beginning on or about April 30, 2019, Plaintiff began the process of being approved to work specifically within the Regional Director's Office in Grand Prairie, Texas, where only two such positions are available for federal prisoners by furlough.

WWWW.  Beginning on or about May 6, 2019, and continuing through May 14, 2019, ARC Abatement performed abatement procedures regarding the Asbestos and Mold found falling from the walls and ceilings in both Storage 1 and Storage 2.

XXXX.  Between May 13, 2019, through May 26, 2019, Plaintiff worked by furlough in the Regional Director's Office at Grand Prairie, Texas.

17

YYYY. On May 26, 2019, Plaintiff was informed by Case Manager Ruiz that the Warden's Office had been notified by the Regional Director's Office that Plaintiff was to no longer work at the Grand Prairie complex.

ZZZZ. Plaintiff was provided no official reason for the reassignment and was reassigned as Town Driver for the Satellite Camp.

AAAAA. Plaintiff then spoke to Mr. Padgett the following week about Plaintiff's reassignment by the Warden (since Mr. Padgett worked in the Warden's Office Building along with Mr. Freeman) and Mr. Padgett informed Plaintiff that Plaintiff would not be given a reason for reassignment but that the reassignment was probably to do with the Asbestos and Mold exposure claims raised by Plaintiff.

BBBBB. Plaintiff also spoke to Mr. Freeman the same week about Plaintiff's reassignment where Mr. Freeman reiterated that Plaintiff had done nothing wrong and that the reassignment directive was most likely based upon Plaintiff's Asbestos and Mold claims.

CCCCC. Mr. Padgett also informed Plaintiff, during the same conversation referenced above, that he would be receiving yearly checkups for any signs of Asbestos related illnesses affecting his physical body.

DDDDD. During this same conversation, Plaintiff was informed by Mr. Padgett that other staff exposed to the Asbestos and Mold were being represented by the Union and that all exposed were informed by the Warden's Office to get checked out by a medical professional.

EEEEE. R. Fulse, I. Hunter, and Mr. Herring, are each seeking the Union's representation in being compensated, including medical treatment, for their exposure to Asbestos and Mold.

FFFFF. On November 23, 2019, Plantiff filed a Tort Claim with the Regional Director, Mr. Juan Baltazar, seeking $ 10,000,001.00 from the United States due to Plaintiff's exposure to more than 500 days of Cancer Causing Airborn

18

Friable Asbestos and Breath-Taking Asthma Inducing Mold while Plaintiff served his sentence at FCI Seagoville's Satellite Camp. See Exhibit  6 .

GGGGG. On December 10, 2019, Regional Counsel for the Regional Director's Office for the South Central Region denied Plaintiff's November 23, 2019 Tort Claim. See Exhibit  7 .

HHHHH. On December 12, 2019, Plaintiff requested under the Freedom of Information Act ("FOIA") from the Director of the Bureau of Prisons for all records, all documents, and all information in its possession and control pertaining to the reports finding Asbestos and Mold in both Storage 1 and 2 made on October 10, 2018, October 18, 2018, and October 22, 2018, at the Warehouse at FCI Seagoville. See Exhibit  8 .

IIIII. On December 12, 2019, in the same FOIA request, Plaintiff requested the Director of the Bureau of Prisons provide to Plaintiff all records, all documents, and all information pertaining to any bids made for the purpose of abating from both Storage 1 and 2 at the Warehouse at FCI Seagoville the Asbestos and Mold found therein. See Exhibit  8 .

JJJJJ. On December 12, 2019, in the same FOIA request, Plaintiff requested the Director of the Bureau of Prisons provide to Plaintiff all records, all documents, and all information pertaining to ARC Abatement, including its bids, its invoices, and any certifications made by ARC Abatement, stemming from the abatement ARC Abatement performed between May 1, 2019, through May 14, 2019, involving Storage 1 and 2 at the Warehouse at FCI Seagoville involving the Asbestos and Mold. See Exhibit  8 .

KKKKK. On January 7, 2020, Plaintiff received a response letter from the South Central Regional Office explaining it could take up to nine months to process Plaintiff's FOIA requests dated December 12, 2019. See Exhibit  8 .

LLLLL. Since at least September, 2001, the United States' Department of Health

19

and Human Services, has recognized two tpyes of Asbestos fibers. See Exhibit
_9_, pg. _1_ (describing "small diameter fibers and particles that remain sus-
pended in the air for a long period of time and can be carried long distances"
and "[L]arger diameter fibers and particles [that] tend to settle more quickly.").

MMMM. The National Emmissions Standards for Hazardous Air Pollutants ("NESHAP")
at 40 CFR §§ 61.141 through 61.157, provides "friable Asbestos" means "Non Friable
Asbestos" that has a high probability of becoming or has become crumbled, pulv-
erized, or reduced to powder or by the forces expected to act on material in
the course of demolition or renovations, like that found in Storage 1 and 2
falling from the walls and ceilings from on or about April 1, 2017, through on
or about May 14, 2019 (when abatement was possibly complete).

FIRST CLAIM (Bivens)

NNNNN. Paragraphs A through MMMM are realleged and incorporated herein by reference as if set forth word for word herein.

OOOOO. Defendant Mark Christian, between April 1, 2017, through on or about July 1, 2018, was a heavy cigarette smoker during visits to the Commissary Warehouse smoking on the front dock acting deliberately indifferent to his own safety and medical needs knowing smoking causes cancer and disregarding that well documents warning.

PPPPP. Defendant Mark Christian, as of on or about September 23, 2017, was made fully aware of the presence of Hazardous material, including Asbestos Containing Material, throughout FCI Seagoville and its Warehouse having previously worked in Commissary Warehouse where Asbestos had previously been released, located, and abated.

QQQQQ. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware he was to presume any building located at FCI Seagoville constructed before 1980 contained Asbestos Containing Materials (29 CFR § 1910.1001(a), (b), and (j)(2).

RRRRR. Defendant Mark Christian, as of on or about September 23, 2017, was made fully aware the Warehouse at FCI Seagoville was constructed prior to 1980 and in the late 1930s or early 1940s.

SSSSS. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware Asbestos was a hazardous material according to the United States Government and society in general, and the State of Texas specifically.

TTTTT. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware of the dangers that exposure to Asbestos for prolonged periods of time could cause and the substantial risks of serious harm to any person, including Plaintiff, which includes mesothelioma, gastrointestinal, esophagel,

21

kidney, phayngeal, and bucial cavity cancers, and asbestosis (29 CFR § 1910. 1001, and Appendix H).

UUUUU. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware of the dangers asbestos exposure can cause to human beings when it is ingested from the air, from contaminated cloths and bedding, and from skin (29 CFR § 1910-1001, and Appendix G).

VVVVV. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware that asbestos is a hazardous air pollutant under 42 U.S.C. § 7412-(b)(1) and its known release into the air is a crime subject to 15 years imprisonment under 42 U.S.C. § 7413(c)(5)(A).

WWWWW. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware that asbestos is a hazardous air pollutant under 42 U.S.C. § 9603-(b)(3) and his failure to notify of the release of asbestos into the air at the Warehouse at FCI Seagoville, and false and misleading statements made involving that release, is a crime subject to 3 years imprisonment under 42 U.S.C. § 9603(b)(3).

XXXXX. Defendant Mark Christian, as of on or about September 23, 2017, was fully aware of the dusty substances, black chunks and black smaller substances, falling from the walls and ceilings in Storage 1 and 2 of the Warehouse at FCI Seagoville.

YYYYY. Defendant Mark Christian, beginning at least as early as September 23, 2017, through his departure from FCI Seagoville in or around July 1, 2018, acted deliberately indifferent to Plaintiff's safety and medical needs when he was aware of the hazardous materials falling from the walls and ceilings in both Storage 1 and 2 subjecting Plaintiff to a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the hazardous material and protect Plaintiff from exposure to such hazardous

materials.

ZZZZZ. Plaintiff has exhausted all available administrative remedies that were available at FCI Seagoville, the Regional Director's Office, and the Director of the Bureau of Prison's Central Office in Washington D.C.

AAAAAA. As a result of the foregoing, Defendant Mark Christian violated Plaintiff's Eighth Amendment Right to be free from cruel and unusual punishment causing Plaintiff to be subjected to Friable Airborn Asbestos and Breath-Taking, Asthma inducing, Mold between on or about September 23, 2017, through and including up to October 22, 2018, and beyond.

BBBBBB. Accordingly, Plaintiff requests this Court enter Judgment in Plaintiff's favor and against Defendant Mark Christian for violating Plaintiff's Eighth Amendment Rights and for causing Plaintiff to suffer an unreasonable risk of serious damage and injury to Plaintiff's future health and the loss of capacity of life in the future with just compensation for damages in the amount of $ 4,000,000.00 for such violations (U.S. Dollars).

SECOND CLAIM (Bivens)

CCCCCC.  Paragraphs A through BBBBBB are realleged and incorporated herein by reference as if set forth word for word.

DDDDDD.  Defendant Ernesto Rosales, as of September 23, 2017, was fully aware of the presence of Asbestos Containing Material throughout Seagoville FCI and its outside Warehouse having served as Assistant or Associate Warden over operations prior to on or about September 23, 2017.

EEEEEE.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware he was to presume any building located at Seagoville FCI constr-ucted before 1980 contained Asbestos Containing Materials (29 CFR § 1910.1001-(a), (b), and (j)(2)).

FFFFFF.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware the Warehouse at Seagoville FCI was constructed prior to 1980 and in the late 1930s or early 1940s.

GGGGGG.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware asbestos was a hazardous material according to the United States Government, society in general, and the States of Texas specifically.

HHHHHH.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware of the dangers that exposure to asbestos for prolonged periods of time resulted in substantial risks of serious harm to any person, including Plaintiff, a federal inmate, which includes mesothelioma, gastrointestinal, esophagel, kindey, phayngeal, and bucial cavity cancers, and asbestosis (29 CFR § 1910.1001, and Appendix H).

IIIIII.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware of the dangers asbestos exposure can cause to human beings when it is ingested from the air, from contaminated clothing and bedding, and from skin (29 CFR § 1910-1001, and Appendix G).

JJJJJJ.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware of the dusty substances, black chunks and black smaller substances, falling from the walls and ceilings in both Storage 1 and 2 of the outside Warehouse at Seagoville FCI.

KKKKKK.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware of that asbestos is a hazardous air pollutant under 42 U.S.C. § 7412(b)(1) and its known release into the air is a crime subject to as much as 15 years imprisonment under 42 U.S.C. § 7413(c)(5)(A).

LLLLLL.  Defendant Ernesto Rosales, as of on or about September 23, 2017, was fully aware that asbestos is a hazardous air pollutant under 42 U.S.C. § 9603-(b)(3) and his failure to notify of the release of asbestos into the air at the outside Warehouse at Seagoville FCI, and the false and misleading state-ments made involving that release, are crimes subject to as much as 3 years imprisonment under 42 U.S.C. § 9603(b)(3).

MMMMM.  Defendant Ernesto Rosales, beginning at least as early as September 23, 2017, through his departure from Seagoville FCI in or around July 1, 2018, acted deliberately indifferent to Plaintiff's safety and medical needs when he was aware of hazardous material falling from the walls and ceilings in both Storage 1 and 2 subjecting Plaintiff to a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the hazardous material and protect Plaintiff from exposure to such hazardous mat-erials.

NNNNNN.  Plaintiff has exhausted all available administrative remedies that were available at Seagoville FCI, the Regional Director's Office, and with the Director of the Bureau of Prisons Central Office in Washington D.C.

OOOOOO.  As a result of the foregoing, Defendant Ernesto Rosales violated Plaintiff's Eighth Amendment Rights to be free from cruel and unusual punish-

ment causing Plaintiff to be subjected to Friable Airborn Asbestos and Breath-Taking, Asthma inducing, Mold between on or about September 23, 2017, through and including up to October 22, 2018, and beyond.

PPPPPP.  Accordingly, Plaintiff requests this Court enter Judgment in Plaintiff's favor and against Defendant Ernesto Rosales for violating Plaintiff's Eighth Amendment Rights and for causing Plaintiff to suffer an unreasonable risk of serious damage and inury to Plaintiff's future health and the loss of capacity of life in the future with just compensation for damages in the amount of $ 4,000,000.00 for such violations (U.S. Dollars).

### THIRD CLAIM (Tort)

QQQQQQ.  Paragraphs A through PPPPPP are realleged and incorporated herein as if set forth word for word.

RRRRRR.  Defendant United States built the outside Warehouse at Seagoville FCI, or had it built, using Asbestos Containing Material in the late 1930s, or early 1940s, and at least prior to 1980.

SSSSSS.  Defendant United States, between on or about April 1, 2017, through July, 2018, allows its officers and employees to smoke Cigarettes in the outside Warehouse area at Seagoville FCI, including its front and back dock areas, in deliberate indifference to Plaintiff, other staff, and inmates safety and medical needs.

TTTTTT.  Defendant United States, prior to on or about April 1, 2017, paid large sums of money to have asbestos removed from parts of the outside Warehouse only after Asbestos Containing Material had been releasing asbestos for an unacceptable period of time into the air in and around the outside Warehouse.

UUUUUU.  Defendant United States, as of on or about April 1, 2017, was fully aware it was to presume any building located at Seagoville FCI and its Satellite Camp, which contains some Historical Landmark areas, was constructed before 1980 and contained Asbestos Containing Materials(29 CFR § 1910.1001(a), (b), and (j)(2).

VVVVVV.  Defendant United States, as of on or about September 23, 2017, was fully aware the outside Warehouse at Seagoville FCI, and its Satellite Camp, was constructed in the late 1930s or early 1940s.

WWWWWW.  Defendant United States, as of on or about April 1, 2017, was fully aware asbestos was a hazardous material according to its own findings and publications, society in general, and the State of Texas specifically.

27

XXXXXX. Defendant United States, as of on or about April 1, 2017, was fully aware of the dangers that exposure to asbestos for prolonged periods of time resulted in substantial risks of serioud harm to any person, including Plaintiff, which includes mesothelioma, gastrointestinal, esophagel, kindsey, phayngeal, and bucial cavity cancers, and asbestosis (29 CFR § 1910.1001, and Appendix H).

YYYYYY. Defendant United States, as of on or about April 1, 2017, was fully aware of the dangers asbestos exposure can cause to human beings when it is ingested from the air, from contaminated clothing and bedding, and from skin (29 CFR § 1910-1001, and Appendix G).

ZZZZZZ. Defendant United States, as of on or about April 1, 2017, was fully aware that asbestos is a hazardous air pollutant under 42 U.S.C. § 7412(b)(1) and its knowing release into the air is a crime subject to as much as 15 years imprisonment under 42 U.S.C. § 7413(c)(5)(A).

AAAAAAA. Defendant United States, as of on or about April 1, 2017, was fully aware that asbestos is a hazardous air pollutant under 42 U.S.C. § 9603(b)(3) and its failure to notify of the release of asbestos into the air at the outside Warehouse at Seagoville FCI, and the false and misleading statements made involving that release, are crimes subject to as much as 3 years imprisonment under 42 U.S.C. § 9603(b)(3).

BBBBBBB. Defendant United States, as of on or about April 1, 2017, through present day, through its employees, officers, and agents., is aware that the two storage rooms in the outside Warehouse at Seagoville FCI and its Satellite Camp, were filled with dusty substances, black chunk substances, and smaller black substances, falling from the walls and ceilings therein between April, 2017 through conclusion of abatement around May 14, 2019.

CCCCCCC. Defendant United States, between on or about April 1, 2017, through

28

present day, through its employees, officers, and agents identified through-
out this complaint, falsified reports involving the hazardous materials loc-
ated and airborn in both Storage 1 and 2 in the outside Warehouse and contin-
ued to maintain these false reports in effert to mislead Plaintiff, the public
locally and nationally, and where applicable, the United States Courts, in
that the falling substances filling both Storage 1 and 2 was mildew only and
not asbestos or mold, then contained nonfriable asbestos that had never become
disturbed to the point of becoming airborn though it had fallen to the floor
and property around 11 feet below, when the United States knew that the falling
substances were in fact Airborn Friable Asbestos and Breath-Taking, Asthma
Inducing Mold.

   DDDDDDD. Defendant United States, between on or about April 1, 2017, through
at least October 11, 2018, knowingly subjected Plaintiff and other federal pri-
soners, and staff at Seagoville FCI, to the hazardous material of Airborn Fri-
able Asbestos and Breath-Taking Mold, in unacceptable amounts and durations,
falling from the walls and ceilings in both Storage 1 and 2, further disturbed
as it hit the property and floor 11 feet below, and to the substantial risk of
serious harm, disregarding the risk by failing to take reasonable measures to
abate the hazardous materials and protect Plaintiff and others from unaccept-
able exposure to such hazardous materials.

   EEEEEEE. Defendant United States, through its employees, officers, and
agents identified in this Complaint above and herein, had a system of reward
and promotion to those who were officially involved in the discovery, contin-
ued release, and cover up, of Airborn Friable Asbestos and Breath-Taking,
Asthma Inducing Mold, by either providing a higher grade and more paying job
to such persons at Seagoville FCI, or providing the option of tranferring to
another job within the Federal System, both within and without the Bureau of

29

Prisons.

FFFFFFF.  Defendant United States, between on or about April 1, 2017,
through at least October 22, 2018, throughout the entire prison complex at
Seagoville FCI and its Satellite Camp's living quarters, through the distr-
ibution of hundres of asbestos and mold covered mattresses, asbestos and mold
covered toilet paper contained in carboard boxes, asbestos and mold covered
inmate lockers contained in cardboard boxes, asbestos and mold covered wash-
ers and dryers (that Plaintiff rebuilt and maintained personally), asbestos
and mold covered new, used, and rebuilt Executive Staff and Medical Staff
Furniture, commissary products and food service products, and through inmates
and their cloths, hair, skin, jackets, towels, bedding such as sheets, blankets,
and pillow cases.

GGGGGGG.  Plaintiff has exhausted all available administrative remedies avail-
able with the Attorney General and the Bureau of Prisons in connection with
Plaintiff's Tort Claim.

HHHHHHH.  Defendant United States has refused to provide Plaintiff Medical
Attention and Treatment due to Plaintiff's Exposure.

IIIIIII.  As a result, Defendant United States violated Plaintiff's Eighth
Amendment Rights to be free from cruel and unusual punishment causing Plain-
tiff to be subjected to Friable, Airborn, Asbestos, and Breath-Taking, Asthma
Inducing, Mold, between on or about April 1, 2017, through and including up
to October 22, 2018, and beyond.

JJJJJJJ.  Accordinly, Plaintiff requests this Court enter judgment in Plain-
tiff's favor and against Defendant United States for violating Plaintiff's
Eighth Amendment Rights and for causing Plaintiff to suffer an unreasonable
risk of serious damage to Plaintiff's future health and the loss of capacity
of life in the future with just compensation for damages in the amount of

$ 10,000,001.00.

FOURTH CLAIM (FOIA)

KKKKKKK.  Paragraphs A through JJJJJJJ are realleged and incorporated herein by reference as if set forth word for word.

LLLLLLL.  Defendant Bureau of Prisons, an agency of the United States subject the Freedom of Information Act ("FOIA"), has failed to adequately uncover all documents and records related to the asbestos and mold found at Seagoville FCI in its outside Warehouse within the time allowed by Congress in violation of 5 U.S.C. §§ 552(a)(1), 552(a)(3)(A), 552(a)(3)(5), 552(a)(3)(C), 552(a)(6)-(A)(i), 552(a)(6)(A)(ii), and all regulations promulgated thereunder for the Department of Justice and its Bureau of Prisons.

MMMMMM.  Defendant Bureau of Prisons' failure or refusal to adequately uncover all documents related to the asbestos and mold found at Seagoville FCI in its outside Warehouse, within the time allowed by Congress, is arbitrary, capricious, and abuse of all discretion, and in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq.

NNNNNNN.  Plaintiff has exhausted all available adminstrative remedies available with the Director of the Bureau of Prisons in connection with Plaintiff's FOIA request dated December 12, 2019.

OOOOOOO.  Accordingly, Plaintiff requests this Court to enter judgment in Plaintiff's favor and against the agency Bureau of Prisons finding it violated the FOIA and APA including its failure and refusal to adequately uncover, within the time allowed by law, all documents and records within the Bureau of Prisons in regard to Plaintiff's FOIA request dated December 12, 2019.

FIFTH CLAIM (FOIA) (injunction)

PPPPPPP. Paragraphs A through OOOOOOO are realleged and incorporated herein as if set forth word for word.

QQQQQQQ. Defendant Bureau of Prisons, an agency of the United States subject to the FOIA has intentionally and unlawfully withheld and unreasonably delayed the uncovering and turning over of the abestos and mold documents and records Plaintiff sought dated December 12, 2019.

RRRRRRR. Such refusal to comply with the FOIA and APA is arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedures required by law.

SSSSSSS. All such records and documents requested by Plaintiff under the FOIA and APA are public records and documents and not subject to any valid known claim of exemption that Plaintiff was given notice about.

TTTTTTT. Plaintiff has exhausted all available administrative remedies available with the Director of the Bureau of Prisons in connection with Plaintiff's FOIA request dated December 12, 2019.

UUUUUUU. Accordingly, the Bureua of Prisons having refused and failed to comply with the FOIA and the APA, this Court should enter a permanent injunction against the Bureau of Prisons, and those in its direct employment, supervision, and control, ordering the production of all records and documents responsive to Plaintiff's FOIA request dated December 12, 2019 involving the asbestos and mold found at Seagoville FCI and its outside Warehouse and Satellite Camp without any further delay.

33

VI.  RELIEF:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

As to my TWO Bivens Claims, I request the Court provide me a Jury Trial on every fact that remains in dispute. As to the same TWO Bivens Claims, I request Judgment in my favor and against each Bivens Defendant in the amount of $ 4,000,000.00. As to my Tort Claim, I request the Court find in my favor and against the United States awarding me Judgment in the amount of $ 10,000,000.00. As to my TWO Claims under the FOIA, I request the Court find the Bureau of Prisons failed to comply with my FOIA request involving the asbestos and mold found at Seagoville FCI, within the time provided by Federal Law, Order the Bureau of Prisons provide all records and documents sought by Plaintiff's FOIA request without any further delay, and enter an Injunction against the Bureau of Prisons enjoining them from any further withholding of the records and documents in their possession and control responsive to Plaintiff's FOIA requests. I also request the Court enter an Order in Plaintiff's favor and against each Defendant for the fees and costs associated with the prosecution of this Case along with reasonable attorneys fees and expenses to the extent such fees and expenses become applicable in the prosecution of this Case.

VII.  GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

   Lindsey K. Springer, Bondage Breaker's Ministry, and SLCA Family Trust

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

_____

VIII.  SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?  _X_ Yes _____ No

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

   1. Court that imposed sanctions (if federal, give the district and division): United States Tax Court

   2. Case Number:  26045-96

   3. Approximate date sanctions were imposed:   February 10, 1997

4. Have the sanctions been lifted or otherwise satisfied?
   __X__ Yes _____ No (These were the subject of litigation in U.S.A.
   v. Springer, et al, 08-CV-278 (NDOK) for which my house was
   taken and sold by the IRS applying approximately $ 80,000.00
   to the judgment in that case). I was in Federal Prison at the
   time of the sale and it is not clear how that money was applied.

1. Court that imposed sanctions(if federal, give the district and
   division): United States Court of Appeals for the Tenth Circuit

2. Case Number:  97-9008

3. Approximate date sanctions were imposed:  October 15, 1997

4. Have the sanctions been lifted or otherwise satisfied?
   __X__ Yes _____ No

1. Court that imposed sanctions(if federal, give the district and
   division): United States Court of Appeals for the Tenth Circuit

2. Case Number:  05-6387, 06-5123, 06-6268

3. Approximate date sanctions were imposed:  May 1, 2007

4. Have the sanctions been lifted or otherwise satisfied?
   __X__ Yes _____ No (These appeals also included certain filing
   restrictions in civil appeals and original actions that remain
   in place).

1. Court that imposed sanctions(if federal, give the district and
   division): United States Court of Appeals for the Tenth Circuit

2. Case Number:  99-5227

3. Approximate date sanctions were imposed:  March 24, 2000

4. Have the sanctions been lifted or otherwise satisfied?
   __X__ Yes _____ No

1. Court that imposed sanctions(if federal, give the district and
   division):  United States District Court for the Northern
   District of Oklahoma

2. Case Number: 15-CV-0142

3. Approximate date sanctions were imposed: October, 2019

4. Have the sanctions been lifted or otherwise satisfied?
   _____ Yes __X__ No (The filing restriction is that any future
   Motions to Set Aside the FOIA Judgment for Fraud on the Court
   requires me to present my Motion to the Chief Judge prior to
   it actually being filed and requiring response by the FOIA
   Defendants).



1. Court that imposed sanctions(if federal, give the district and division): United States Court of Appeals for the Tenth Circuit

2. Case Number: 95-5072, 95-5142

3. Approximate date sanctions were imposed: April 8, 1996

4. Have the sanctions been lifted or otherwise satisfied?
   __X__ Yes _____ No

1. Court that imposed sanctions(if federal, give the district and division): Supreme Court of the United States

2. Case Number: 11-10134

3. Approximate date sanctions were imposed: June 4, 2012

4. Have the sanctions been lifted or otherwise satisfied?
   _____ Yes __X__ No (the restriction imposed is that in noncriminal matters, Springer must pay the filing fees).

I know of no other monetary sanction or filing restriction imposed upon me by any other Court within my memorary and after diligent search of the computers available to me at the Federal Transfer Center in the Lexis Nexis system. I have been in Federal Prison almost 10 years.

C. Has any court ever warned or notified you that sanctions could be imposed? __X__ Yes _____ No

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

1. Court that issued warning(if federal, give the district and division): United States District Court for the Northern District of Oklahoma

2. Case number: 15-CV-0142-D

3. Approximate date warning was issued: September, 2019 (though the district judge warned me, he then imposed the restiction acknowledging I had not done anything after his warning in violation of the warning)(his Order on restrictions admits this but imposed the filtering restriction none-the-less).

Executed on: October 6, 2020
DATE

Signature of Plaintiff

36

PLAINTIFF'S DECLARATIONS

1. I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that all facts presented in this complaint and attachments thereto are true and correct to the best of my knowledge and belief.

2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from brining an in forma pauperis lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical inury?

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this ____6____ day of __October__ , __2020__ .
        (Day)           (month)      (year)

                              Signature of Plaintiff

WARNING: Plaintiff is advised any false or deliberate misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.

37

**E X H I B I T**

**1**

# DANGER

# ASBESTOS

# MAY CAUSE CANCER

# CAUSES DAMAGE TO LUNGS

# AUTHORIZED PERSONNEL
# ONLY

10/11/18

29CFR [1910.1001(j)(4)(i)]

C. Rees, Safety Manager  Ext. 4431

**E X H I B I T**

**2**

To:   National Inmate Appeals Administrator
      Office of General Counsel
      Central Office-Bureau of Prisons
      320 First Street, N.W.
      Washington, D.C. 20534

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Satellite Camp
      P.O. Box 9000
      Seagoville, Texas 75159

Dear General Counsel/National Inmate Appeals Administrator:

Please find enclosed with this letter is my BP-11 and 4 copies of the continuation page, along with 4 copies of Exhibit 1 referenced therein, and (1) a copy of my BP-10 which included (2) a copy of my BP-9, (3) a copy of my Informal Resolution Form, (4) a copy of my Inmate Request to Staff, (5) and a copy of the Regional Director's response, (6) a copy of the Warden's response, (7) a copy of your recent Rejection Notice, and (8) my Certififate of Service and Declaration of Mailing.

Thank you for your consideration of these matters.

Truly,

March 12, 2019

Page 1 of 1

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

*original copy*

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: __Springer, Lindsey K.__         __02580-063__      __S-1, Camp__      __Seagoville__
      LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL**   My reasons for this appeal are that the Regional Director ("RD") did not address in my BP-10 (1) the dates and length of my exposure; (2) my claim the Asbestos Containing Material ("ACM") had fell from the ceilings, scattered over everything in both rooms, and was dry, crumbly, pulverized, some of which was reduced to powder or dust, rendering the disturbed ACM Friable; (3) the Black ACM contained 10% Asbestos; (4) the two air reports were not derived from replicated conditions for which I was exposed to the ACM; (5) it could be determined that I was exposed over an extended period of time to Friable Asbestos; (6) my exposure was based upon the deliberate indifference to my serious medical and safety needs by Mr. Christian and Mr. Rosales; (7) the OSHA standards do not apply to the BOP's facilities and that OSHA standards were not followed in what led to my Friable Asbestos exposure; (8) or that I was exposed over an extended period of time to asthma inducing mold.  I request you specifically address these Eight issues respectively and in my favor.  I request you reject the RD's finding (i) the Black ACM composed of 5% Chrysotile; (ii) find the ACM composed 10% Asbestos; (iii) find the ACM was dry, crumbly, pulverized as it fell from the 11 ft. (continued at continuation page marked as page 2 attached hereto)

__March 11, 2019__
      DATE                                    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

---

     DATE                                       GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE              CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**
                                       CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

                                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL      BP–231(13)

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | Springer, Lindsey. K. | 02580-063 | S-1, Camp | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**
My reasons for this appeal are that the Regional Director ("RD") did not address in my BP-10 (1) the dates and length of my exposure; (2) my claim the Asbestos Containing Material ("ACM") had fell from the ceilings, scattered over everything in both rooms, and was dry, crumbly, pulverized, some of which was reduced to powder or dust, rendering the disturbed ACM Friable; (3) the Black ACM contained 10% Asbestos; (4) the two air reports were not derived from replicated conditions for which I was exposed to the ACM; (5) it could be determined that I was exposed over an extended period of time to Friable Asbestos; (6) my exposure was based upon the deliberate indifference to my serious medical and safety needs by Mr. Christian and Mr. Rosales; (7) the OSHA standards do not apply to the BOP's facilities and that OSHA standards were not followed in what led to my Friable Asbestos exposure; (8) or that I was exposed over an extended period of time to asthma inducing mold. I request you specifically address these Eight issues respectively and in my favor. I request you reject the RD's finding (i) the Black ACM composed of 5% Chrysotile; (ii) find the ACM composed 10% Asbestos; (iii) find the ACM was dry, crumbly, pulverized as it fell from the 11 ft. (continued at continuation page marked as page 2 attached hereto)

March 11, 2019
DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____ DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

_____ DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

page 2 attached to BP-11

ceilings landing on the property or floor below and not the type of ACM that anyone would grind, drill, or sand, like floor tile; (iv) find the type of Asbestos disturbed would have settled down quickly in both rooms under the circumstances, see Exhibit _L_, rendering unreliable both post-sealing air reports in determining my pre-sealing Asbestos exposure; and (v) find the source of the RD's conclusions or information was not identified in the RD's BP-10 response to test whether the proper procedures have been followed.

As a result, I request you conclude my Eighth Amendment right to be free from cruel and unusual punishment was violated over an extended period of time directing, due to those violations, (1) I be paid $ 2,000,000.00; (2) due to having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, I be paid $ 2,000,000.00; (3) due to my lengthy exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment; and (4) due to the cruel and unusual punishment of being exposed to Cancer Causing Asbestos and Asthma Inducing Mold for approximately _18_ months, that I be given 5 days credit for every day of my incarceration from _April 1_____, 201 _7_ through October 11, 2018, totaling _560_____ days equaling _2800_____ days or _93.3_____ months credited towards my _180_____ month sentence.



# ATSDR
**AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY**

# ASBESTOS
## CAS # 1332-21-4

Division of Toxicology ToxFAQs                                                                    September 2001

This fact sheet answers the most frequently asked health questions (FAQs) about asbestos. For more information, call the ATSDR Information Center at 1-888-422-8737. This fact sheet is one in a series of summaries about hazardous substances and their health effects. It's important you understand this information because this substance may harm you. The effects of exposure to any hazardous substance depend on the dose, the duration, how you are exposed, individual susceptibility and personal habits, and whether other chemicals are present.

---

**HIGHLIGHTS: Exposure to asbestos usually occurs by breathing contaminated air in workplaces that make or use asbestos. Asbestos is also found in the air of buildings that are being torn down or renovated. Asbestos exposure can cause serious lung problems and cancer. This substance has been found at 83 of the 1,585 National Priorities List sites identified by the Environmental Protection Agency (EPA).**

---

## What is asbestos?
Asbestos is the name given to a group of six different fibrous minerals (amosite, chrysotile, crocidolite, and the fibrous varieties of tremolite, actinolite, and anthophyllite) that occur naturally in the environment. Asbestos minerals have separable long fibers that are strong and flexible enough to be spun and woven and are heat resistant. Because of these characteristics, asbestos has been used for a wide range of manufactured goods, mostly in building materials (roofing shingles, ceiling and floor tiles, paper products, and asbestos cement products), friction products (automobile clutch, brake, and transmission parts), heat-resistant fabrics, packaging, gaskets, and coatings. Some vermiculite or talc products products may contain asbestos.

## What happens to asbestos when it enters the environment?
Asbestos fibers can enter the air or water from the breakdown of natural deposits and manufactured asbestos products. Asbestos fibers do not evaporate into air or dissolve in water. Small diameter fibers and particles may remain suspended in the air for a long time and be carried long distances by wind or water before settling down. Larger diameter fibers and particles tend to settle more quickly.

Asbestos fibers are not able to move through soil. Asbestos fibers are generally not broken down to other compounds and will remain virtually unchanged over long periods.

## How might I be exposed to asbestos?
We are all exposed to low levels of asbestos in the air we breathe. These levels range from 0.00001 to 0.0001 fibers per milliliter of air and generally are highest in cities and industrial areas.

People working in industries that make or use asbestos products or who are involved in asbestos mining may be exposed to high levels of asbestos. People living near these industries may also be exposed to high levels of asbestos in air.

Asbestos fibers may be released into the air by the disturbance of asbestos-containing material during product use, demolition work, building or home maintenance, repair, and remodeling. In general, exposure may occur only when the asbestos-containing material is disturbed in some way to release particles and fibers into the air.

Drinking water may contain asbestos from natural sources or from asbestos-containing cement pipes.

## How can asbestos affect my health?
Asbestos mainly affects the lungs and the membrane that surrounds the lungs. Breathing high levels of asbestos fibers for a long time may result in scar-like tissue in the lungs and in the pleural membrane (lining) that surrounds the lung. This disease is called asbestosis and is usually found in workers exposed to asbestos, but not in the general public. People with asbestosis have difficulty breathing, often a cough, and in severe cases heart enlargement. Asbestosis is a serious disease and can eventually lead to disability and death.

BP-11                    Exhibit 1

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: __Springer, Lindsey K.__ ____02580-063____ ____S-1, Camp____ ____Seagoville____
       LAST NAME. FIRST. MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A—REASON FOR APPEAL    This appeal is from the Warden's denial of my requested relief in my BP-9. I request you reverse, and overrule, the reasons the Warden gave for her denial. <u>First</u>, I request you find my exposure claim was from April, 2017, to October, 2018, and not from January 29, 2018. <u>Second</u>, I request you find the Warden's interpretation of the two referenced (but not provided) reports finding Asbestos Containing Material ("ACM") is inconsistent with that finding. I ask you to find ACM contains both FRIABLE and NONFRIABLE material where the ACM can be crumbled, pulverized, or reduced to powder by hand pressure. See 40 CFR § 61.141. And see 29 CFR § 1910.1001, Appendix G, I(c). In my case, I ask you to find the ACM fell from the ceiling in both rooms scattering all over everything within the two rooms meeting the meaning of FRIABILITY. Under § 61.141 "nonfriable" cannot ever be crumbled, pulverized, or reduced to powder. My informal and BP-9 claims show the ACM substance "scattered throughout both rooms falling from the ceiling." This undisputed fact satisfies FRIABILITY. The Warden's response agrees ACM was found in the "mastic that adheres to the ceilings of the storage areas." The fact the ceiling panels fell exposing the ACM, which the ACM is the substance that covered everything in both rooms (continued at continuation page 2 attached)

__January 9, 2019__                _Lindsey K Springer_
      DATE                                   SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED

JAN 14 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____            _____
       DATE                                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE              CASE NUMBER: ____962199-R2____

Part C—RECEIPT

                                                CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT         INSTITUTION

SUBJECT: _____

                            ⊛                                             BP-230(13)

CONTINUATION PAGE 2

for more than 1 year. Accordingly, I request you find the ACM in both storage
rooms was Friable, or became Friable, when the ceiling collapsed causing the
ACM to break into small particles, including dust, covering all property held
in both rooms and that the ACM continued to fall daily in both rooms. Third,
I request you find the ACM contained 10% Asbestos. Fourth, I ask you to find
that October 10, 2018 and October 18, 2018 reports finding ACM in both rooms,
and the October 18, 2018 and October 22, 2018 testing air quality, were post-
exposure reports and were at least 1 week after the two rooms were totally
sealed up from the normal elements of open air movement for which I was exposed
for more than 18 months. I ask you to find the air-quality exposure reports
were not derived from replicated conditions that I was exposed to prior to
October 11, 2018. I request you find the air quality reports do not show the
air quality from the ACM that I was exposed to prior to October 11, 2018. Fifth,
I request you reject the Warden's position that it "can be determined (sic)
that no exposure has taken place." My exposure took place prior to the air-
quality test dates and the ACM, at the time of testing, was dry, crumbly, and
pulverized when it fell to the ground or landing, and scattering, all over the
property located in both rooms on a daily basis for 18 months. Sixth, I requ-
est you find the exposure was caused by the deliberate indifference of Mr.
Christian, and Mr. Rosales. The Warden concedes that if her determination is
incorrect then my exposure was caused by the actions and inactions of both
men named above. Seventh, I request you find OSHA does not apply to the United
States, as an Employer under 29 U.S.C. § 652(5) rendering 29 CFR § 1910.1001,
the regulation cited by the Warden in her BP-9 response, inapplicable. Addition-
ally, I request you find, in regard to the two storage rooms in the Warehouse,
that OSHA standards were not followed or applied during the time periods of my
exposure. Eighth, I request you find I was exposed to asthma inducing mold
during the same time period I was exposed to the Cancer Causing Asbestos. The
Warden's response never disputes this claim.
    I request you find (1) due to the violation of my Eighth Amendment right
to be free from cruel and unusual punishment, that I be paid $ 2,000,000.00;
(2) due to having to fear for the rest of my life the loss of capacity of life
in the future, pain, and mental anguish, that I be paid $ 2,000,000.00; (3) due
to my exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United
States agree to held liable for my medical and dental expenses for the rest of
my life due within 30 days of demand for payment; and (4) due to the cruel and
unusual punishment of exposure to Cancer Causing Asbestos and Asthma Inducing
Mold for approximately 18 months, that I be given 5 days credit for
every day of my incarceration from April 1 , 2017 through October 11,
2018, totaling 560 days equaling 2800 days or 93.3 months towards
my 180 month sentence..

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: _SPRINGER, LINDSEY K_ ___02580-063___ ___Camp, S-1___ ___Seagoville___
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos and mold was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided (see page 2 attached for a continuation of the request herein)

_10.29.18_
    DATE

_[signature]_
    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
WARDEN'S OFFICE

DEC 1 1 2018

FCI SEAGOVILLE

_____
    DATE

_____
    WARDEN OR REGIONAL DIRECTOR

*dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: _9762199-F1_

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _9762199-F1_

Part C– RECEIPT
Return to: _Springer Lindsey_ _02580-063_ _Camp_ _SEA_
        LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.      UNIT      INSTITUTION

SUBJECT: _Asbestos/ Reg Compensation_    _[signature]_

_12/11/18_

page 2 attached

oxygen-or air-free from cancer causing asbestos and mold. After Mr. Christ-
ian treated both storage rooms for the finding of mildew, I was directed
that both storage rooms were safe to enter and use. I enquired of Mr.
Christian as to whether both rooms were safe to enter and use to which Mr.
Christian affirmed to me that they were safe and usable. Both rooms were
sprayed with a substance which had a soapy smell to it. I proceeded to
enter both rooms on numerous occassions, sometimes for extended periods of
time, including cleaning the debris from the government's property stored in
each room before delivering the property to its destination that had fallen
from the ceiling. As of October 11, 2018, I was instructed not to enter
either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to
cancer causing asbestos, and mold, subjecting me to cruel and unusual punish-
ment in violation of the Eighth Amendment to the Constitution of the United
States, when it was their duty to do so.

Attached to this BP-9 are (1) a copy of my attempt at informal resolut-
ion, marked as Exhibit 1, and (2) a copy of my Inmate Request to Staff,
marked as Exhibit 2.

I request the following:

First Request:
I request payment for violating my Eighth Amendment right to be free
from cruel and unusual punishment in the amount of $ 2,000,000.00;

Second Request:
I request payment for having to fear for the rest of my life the loss
of capacity of life in the future, pain, and mental anguish in the amount of
$ 2,000,000.00;

Third Request:
I request the United States be held liable for my medical and dental
expenses for the rest of my life due within 30 days of demand for payment;

Fourth Request:
I request, due to the cruel and unusual punishment of being exposed
for approximately 1-year to cancer causing asbestos, and mold, that I be
given 5 days credit for every day of my incarceration from April 1, 2017
through, to, and including, October 11, 2018. The total number of days is
560 served equaling a total credict of 2800 days or 93.3 months credited
towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my
favor as to each of the requests identified above and herein. (this page 2
attached is a continuation of my BP-9 for which this page accompanies).

gave to ZP on 10.29.18
at 4:52 pm  mck Resert qss

C

INMATE REQUEST TO STAFF CORM

P-A0148
UNE 10

S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
| Counsel Shelp | October 29, 2018 |
| FROM: | REGISTER NO.: |
| Lindsey Kent Springer | 02580-063 |
| WORK ASSIGNMENT: | UNIT: |
| Warehouse Clerk | Camp, S-1   Exhibit 2-BP-9  1 of 2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong

mold, between on or about April 1, 2017 through on or about October 11, 2018

when Mr. Rees had me help seal up two storage rooms at the Warehouse where I

work and post signs warning cancer causing asbestos was factually determined

to be present in both storage rooms. Mr. Christian and Mr. Rosales were

aware of the white panels with dark substances scattered throughout both rooms

falling from the ceilings on or about September/October 2017 causing air

quality issues with breathing I was experiencing and abnormal amounts of blood

flowing from my nose. The warehouse had previously been determined to contain

(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)
Page 1 of 2

POSITION:

| Signature Staff Member | Date |
| | |

d Copy - File: Copy - Inmate

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

SECTION 6

IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

ATTACHED SHEET

Exhibit 2
2 of 2   BP-9

asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to assume any substance in any room contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from cancer causing asbestos and mold. After Mr. Christian treated both storage rooms for mildew, I was directed that both storage rooms were safe to enter and use. I enquired of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed to me that they were. Both rooms were sprayed with a substance which had a soapy smell to it. I proceeded to enter both rooms on numberous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering it to its destination. As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

I am required to provide any request for relief administratively.
First Request for Relief:
I request payment for violating my Eighth Amendment right to be free from cruel and unusal punishment in the amount of $ 2,000,000.00;
Second Request for Relief:
I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;
Third Request for Relief:
I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand of payment;
Fourth Request for Relief:
I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018. The total number of days is 560 days served equaling a total credit of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor is to each of the requests identified above and herein. (this attached sheet attaches with my Inmate Request to Staff and should be considered as if it is a part and continuation of that request to its conclusion).

Truly,

Reg. # 02580-063
Lindsey Kent Springer
Warehouse Clerk

gave to Shelp in office at 4:50 PM 10.29.18
A-Mat present JKS

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment I

Federal Correctional Institution
Seagoville, Texas

Administrative Remedy Procedures for Inmates
Informal Resolution Form

Exhibit 1 - BP-9

...au of Prisons Program Statement 1330.16, Administrative Remedy Program, requires, in most cases, that
...tes attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used
...cument your efforts toward informally resolving your grievance. Complete items 1-3 and return to your
...ectional Counselor.

**...ATE'S COMPLAINT:**

...ate your specific complaint:   I was exposed to asbestos while at the Warehouse in vio-
lation of the Eighth Amendment from on or about April 1, 2017 to October 11,
2018. This was deliberately indifferent to my serious safety and medical needs.
I was also exposed to mold during the same time period due to the same reason
above. This could easily have been avoided.

...ate what efforts you have made to informally resolve your complaint:  This is the first effort I
have made to informally resolve my complaint and I know of no other effort I
could make to do so that is available to me.

...ate what resolution you request:  I request (1) $ 2,000,000.00 for violating 8th Amendment,
(2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental
anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

| Springer, Lindsey Kent | 02580-063 | S-1 |
|---|---|---|
| ...e Name | Register Number | Unit |

...e Signature _Lindsey K Springer_       10.29.18
...e Signature                              Date

Told by Shelp he will
route and return copy to me
10/29/18 4:50 PM
JKS

**...RECTIONAL COUNSELOR:**

...orts made to informally resolve and staff contacted: _____
_____
_____
_____
_____
_____
_____

Informal Resolution - Issued BP-9 on _____ (Date)

...ormally Resolved on _____     _____
                           Date                Inmate Signature

...lor's Signature: _____     Date: _____

...anager Review: _____     Date: _____

Regional Administrative Remedy Appeal No. 962199-R2
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted January 14, 2019. You claim you were exposed
to asbestos while working in the institution warehouse at FCI
Seagoville.

A review of this matter reveals that sampling of the material in
the storage rooms at the warehouse was conducted and found the
black mastic to be composed of 5% Chrysotile. The mastic itself
is considered to be non-friable and due to its composition, the
only way for such material to become airborne would be by using
an aggressive method such as grinding, drilling, or sanding.
None of these methods was used on the mastic itself. Regardless,
in order to determine if it was airborne, air sampling was also
conducted and the results were negative. Sampling was conducted
by two independent contractors and both returned with the same
results. The areas have been sealed and will remain sealed until
the remediation process is complete.

A review of the sampling documentation and speaking with FCI
Seagoville staff indicates that proper procedures have been
followed.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.

FEB 2 2 2019
_____
Date

_____
J. F. Caraway
Regional Director

**Part B: Response to Request for Administrative Remedy**          **FCI Seagoville, Texas**

Springer, Lindsey
Register No.: 02580-063
Remedy No.: 962199-F1

This is in response to your Request for Administrative Remedy
receipted December 11, 2018, wherein you allege that: You were
exposed to friable and non-friable cancer causing Asbestos and
strong mold between on or about January 29, 2018 through on or
about October 11, 2018 at your place of work, the outside
warehouse. Staff were indifferent to your serious safety and
medical needs to be provided oxygen-air-free from cancer causing
asbestos and mold. Staff failed to protect you from exposure to
cancer causing asbestos and mold. You were subjected to cruel
and unusual punishment in violation of the eighth amendment of
the Constitution of the United States.

Research into your request reveals that upon notification of
concerns of possible hazardous materials in the outside
Warehouse, FCI Seagoville has conducted the following:
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both bulk material samples read positive for
Asbestos Containing Materials (ACM) in the mastic that adheres
to the ceilings of the storage areas. Although present, the
Asbestos was determined to be non-friable. As a result, both
areas with ACM were sealed and labeled according to OSHA
standards.

On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.

The Occupational Safety and Health Administration has quantified
an Asbestos Exposure to be as follows:

    1910.1001(c)
    Permissible exposure limit (PELS) --
    1910.1001(c) (1)
    Time-weighted average limit (TWA). The employer shall
    ensure that no employee is exposed to an airborne
    concentration of asbestos in excess of 0.1 fiber per cubic
    centimeter of air as an eight (8)-hour time-weighted
    average (TWA) as determined by the method prescribed in
    Appendix A to this section, or by an equivalent method.

1910.1001(c)(2)

Excursion limit. The employer shall ensure that no employee is exposed to an airborne concentration of asbestos in excess of 1.0 fiber per cubic centimeter of air (1 f/cc) as averaged over a sampling period of thirty (30) minutes as determined by the method prescribed in Appendix A to this section, or by an equivalent method.

Due to the results of the two air samples taken and analyzed by two independent contractors, it can be determined that that no exposure has taken place.

Remediation by an independent licensed contractor of both areas with ACM is going to commence as soon as possible.  The areas with ACM will remain sealed until the contractor begins the remediation process.

FCI Seagoville makes every effort to ensure a safe work environment for both staff and inmates.

Based on the above facts/information/reasons, the relief you seek is denied.

If you are not satisfied with this response, you may appeal to the South Central Regional Director, 344 Marine Forces Drive, Grand Prairie, Texas 75051, via BP-DIR-10, within 20 calendar days of the date of this response.

M. Underwood, Warden                    12/20/19
                                        Date

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 15, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
CENTRAL OFFICE

TO  : LINDSEY KENT SPRINGER, 02580-063
SEAGOVILLE FCI    UNT: CAMP    QTR:
2113 NORTH HWY 175
SEAGOVILLE,  TX 75159

RECEIVED
WARDEN'S OFFICE

FEB 2 7 2019

FCI SEAGOVILLE

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 962199-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED   : JANUARY 28, 2019
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : REQUESTS FOR MONETARY COMPENSATION
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : YOUR REGIONAL APPEAL IS DUE ON 03/15/2019. YOU CAN
APPEAL TO THIS LEVEL ON OR AFTER THAT DATE.

CERTIFICATE OF SERVICE

I hereby certify that on March /2, 2019, I sent by U.S. Mail, First Class, Postage Prepaid, my BP-11 with 4 copies of the continuation page, 4 copies of Exhibit 1, 1 copy of my BP-10, 1 copy of the Regional Director's Response, 1 copy of my BP-9, 1 copy of the Warden's Response, 1 copy of my Inmate Informal Resolution Form, 1 copy of my Inmate Request to Staff Form, a cover letter and this Certificate of Service, to the National Inmate Appeals Administrator, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534.

SERVER

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on March /2, 2019, I deposited my BP-11 and the above referenced documents, in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the Appeals Administrator, Office of General Counsel, listed above.

I also declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that I personally witnessed the BP-11 and above referenced documents, were so deposited in an envelope for which this Certificate of Service and Declaration of Mailing were placed within and with.

DECLARANT

**E X H I B I T**

**3**



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

Federal Correctional Institution                    Seagoville, Texas 75159

October 31, 2018

MEMORANDUM FOR SPRINGER #02580-063

FROM:          C. Rees, Environmental & Safety Compliance
               Administrator

SUBJECT:       Notification

Upon notification of concerns of possible hazardous materials in
the outside Warehouse, FCI Seagoville has conducted the
following.
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both material samples read positive for Asbestos
Containing Materials (ACM). As a result, both areas with ACM
were sealed and labeled according to OSHA standards.
On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.
Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible. The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.
I trust this has been responsive to your request.

**E X H I B I T**

**4**

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons    Case 3:20-cv-03088-B-BH    Document 3    Filed 10/09/20    Page 61 of 87    PageID 152

*Copy*

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Springer, Lindsey K.**        **02580-063**        **S-1**        **Seagoville**
     LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A- INMATE REQUEST**

    I am requesting to receive medical treatment for exposure to cancer causing asbestos and mold. On October 31, 2018 I was notified by Mr. Rees that I had been exposed to asbestos found in two storage rooms in the warehouse. I made sick call on November 9, 2018 and informed I would be contacted no later than Tuesday, November 13, 2018 and informed of the medical treatment approved for my exposure. I have not been contacted as of November 20, 2018. I have ~~xxxxxx~~ attached my attempt at informal resolution as Exhibit 1(2 pages).

I gave this to Counselor Shelp at 3:50 PM on November 20, 2018 in his office.

__11.20.18__                                    __Lindsey K Springer__
    DATE                                    (SIGNATURE OF REQUESTER)

**Part B- RESPONSE**

 

_____                    _____
    DATE                                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

__ORIGINAL: RETURN TO INMATE__                    CASE NUMBER: _____

                                        CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
             LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                    _____
    DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                          BP-229(13)
                                          APRIL 1982
USP LVN          ♻ Printed on Recycled Paper



## INMATE TRIAGE/SICKCALL/MEDICATION

## FCI SEAGOVILLE

REASON FOR VISIT (MOTIVO DE LA VISITA)

____SICK CALL ONLY                    ____SICKCALL AND MED

SOLAMENTE                              RENOVATION

NAME(NOMBRE) Springer, Lindsey Kent DATE 11/9/18

REGISTER# (Numero#) 02580·063 UNIT S-1 Work Warehouse

What is your problem (PROBLEMA

HOY? I was exposed to asbestos and mold while working at the Warehouse for a lengthy period of time. See attached Memoradm as Exhibit 1

**DO NOT WRITE ON THE BACK**

HOW LONG HAVE YOU HAD THIS PROBLEM My exposure began apprx. 4/17 (April 1, 2017)

DO YOU TAKE ANY OVER THE COUNTER MEDICATIONS nose spray currently

PAIN SCALE 0-10_____   CALLOUTS TODAY_____

TRIAGE PERSONNEL NOTES: Ms. Mahon —
Will contact Dr. Holla to determine what test to be taken and will know today, 11.9.18, or by Tuesday, 11.13.18, what will happen medically next for all 4 of us

Exhibit 1
1 of 2



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

| Federal Correctional Institution | Seagoville, Texas 75159 |
|---|---|

October 31, 2018

MEMORANDUM FOR SPRINGER #02580-063

*C. Rees*

FROM:            C. Rees, Environmental & Safety Compliance
                 Administrator

SUBJECT:            Notification

Upon notification of concerns of possible hazardous materials in
the outside Warehouse, FCI Seagoville has conducted the
following.
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both material samples read positive for Asbestos
Containing Materials (ACM).  As a result, both areas with ACM
were sealed and labeled according to OSHA standards.
On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.
Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible.  The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.
I trust this has been responsive to your request.

Exhibit 1
2 of 2

**E X H I B I T**

5

```
LINDSEY KENT SPRINGER, 02580-063
SEAGOVILLE FCI      UNT: CAMP      QTR:
2113 NORTH HWY 175
SEAGOVILLE,   TX 75159
```

RECEIVED
WARDEN'S OFFICE

APR 2 2 2019

FCI SEAGOVILLE

**Administrative Remedy No. 962199-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal, wherein you claim you were exposed asbestos while working
in the institution warehouse at FCI Seagoville. For relief, you
request monetary compensation, jail credit and lifetime medical and
dental coverage.

We have reviewed documentation relevant to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns at the time of
your Request for Administrative Remedy and subsequent appeal. Staff
actions in this matter are consistent with the requirements of
Program Statement 1600.11, National Occupational Safety and Health
Policy. We find no further review in this matter is warranted.

The Administrative Remedy Program does not provide for monetary
relief. For the type of relief you seek, the Inmate Accident
Compensation Program, 28 C.F.R. 301, is the statutorily mandated
procedure.

Accordingly, your appeal is denied.


___4\9\19___                        _____
Date                                Ian Connors, Administrator
                                    National Inmate Appeals

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

---

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __Springer, Lindsey K.__     __02580-063__     __S-1, Camp__     __Seagoville__
       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.       UNIT       INSTITUTION

**Part A—REASON FOR APPEAL**   My reasons for this appeal are that the Regional Director ("RD") did not address in my BP-10 (1) the dates and length of my exposure; (2) my claim the Asbestos Containing Material ("ACM") had fell from the ceilings, scattered over everything in both rooms, and was dry, crumbly, pulverized, some of which was reduced to powder or dust, rendering the disturbed ACM Friable; (3) the Black ACM contained 10% Asbestos; (4) the two air reports were not derived from replicated conditions for which I was exposed to the ACM; (5) it could be determined that I was exposed over an extended period of time to Friable Asbestos; (6) my exposure was based upon the deliberate indifference to my serious medical and safety needs by Mr. Christian and Mr. Rosales; (7) the OSHA standards do not apply to the BOP's facilities and that OSHA standards were not followed in what led to my Friable Asbestos exposure; (8) or that I was exposed over an extended period of time to asthma inducing mold.  I request you specifically address these Eight issues respectively and in my favor.  I request you reject the RD's finding (i) the Black ACM composed of 5% Chrysotile; (ii) find the ACM composed 10% Asbestos; (iii) find the ACM was dry, crumbly, pulverized as it fell from the 11 ft. (continued at continuation page marked as page 2 attached hereto)

__March 11, 2019__                _Lindsey K. Springer_
      DATE                                SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

MAR 1 9 2019

Administrative Remedy Section
Federal Bureau of Prisons

---

      DATE                                        GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE               CASE NUMBER: __962199-A1__

**Part C—RECEIPT**

                                           CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____
      DATE                 SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL      BP-231(13)
                                                         APRIL 1982

page 2 attached to BP-11

ceilings landing on the property or floor below and not the type of ACM that anyone would grind, drill, or sand, like floor tile; (iv) find the type of Asbestos disturbed would have settled down quickly in both rooms under the circumstances, see Exhibit **1**, rendering unreliable both post-sealing air reports in determining my pre-sealing Asbestos exposure; and (v) find the source of the RD's conclusions or information was not ident-ified in the RD's BP-10 response to test whether the proper procedures have been followed.

As a result, I request you conclude my Eighth Amendment right to be free from cruel and unusual punishment was violated over an extended period of time directing, due to those violations, (1) I be paid $ 2,000,000.00; (2) due to having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, I be paid $ 2,000,000.00; (3) due to my lengthy exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment; and (4) due to the cruel and unusual punishment of being exposed to Cancer Causing Asbestos and Asthma Inducing Mold for approximately **18** months, that I be given 5 days credit for every day of my incarceration from **April 1**, 201**7** through October 11, 2018, totaling **560** days equaling **2800** days or **93.3** months credited towards my **150** month sentence.

E X H I B I T

6

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVOED OMB NO. 1105-0008 EXPIRES 5-31-05 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Juan Baltazar, Regional Director South Central Region U.S. Armed Force Reserve Complex 344 Marine Forces Drive, Grand Prairie, TX 75051 | Lindsey Kent Springer Reg. # 02580-063 Federal Transfer Center P.O. Box 889801, Oklahoma City, OK 73189 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN BOP | 4. DATE OF BIRTH 9.11.65 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT 4.1.17 to 10.11.18 | 7. TIME (A.M. OR P.M) throughout |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.) While serving my Federal Sentence at the Federal Prison Camp at FCI Seagoville, I was exposed to more than 500 days of cancer causing asbestos and breath-taking mold which I breathed in for the duration, got in my hair, clothes and was carried from the warehouse, the cite of the ACM and Mold, over into the living quarters where I was directed by staff to replace all my bedding and cloths with new ones. As detailed more specifically in the attached **additional pages**, the ACM and Mold covered toilet paper boxes and mattresses delivered to the Camp, as well as other property of the BOP delivered throughout the Prison (see additional pages 1 to 4 )

| 9. PROPERTY DAMAGE |
|---|
| NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code) |
| |
| BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side) |
| |

| 10. PERSONAL INJURY/WRONGFUL DEATH |
|---|
| STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT  Exposure to more than 500 days of cancer causing asbestos and breath-taking mold. "Asbestos can cause disabling respiratory disease and various types of cancer if the fibers are inhaled.  Inhaling or ingesting fibers from contaminated clothing or skin can also result in these diseases, the symptoms of these diseases **generally do not appear for 20 years or more after initial exposure.**" 29 CFR § 1910-1001 Appendix G, § II.A |

| 11. WITNESSES | |
|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
| Robert Freeman, Casey Herring, Issac Hunter, Rashad Fulce, Bruce Padgett, Damon Lynn, Chris Rees, Mile Shelp, S. Jefferson/ ARC Abatement | FCI Seagoville, 2113 N. HWY 175, Seagoville, Texas, 75159 Unknown    (there are many other witnesses) |

| 12. (See instructions on reverse) AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY $10,000,001.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM 11.23.2019 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States.  (See 18 U.S.C.A. 287.) |
|---|---|

| 95-108 Previous editions not usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (Rev. 7-85) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority*: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose*: The information requested is to be used in evaluating claims.

C. *Routine Use*: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond*: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

**INSTRUCTIONS**

Complete all items – Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT, THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC  20503

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15.   Do you carry accident insurance?  ☐ Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number.  ☒ No

NO

| 16.   Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| NO | |

18.   If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim?  (*It is necessary that you ascertain these facts*)

19.  Do you carry public liability and property damage insurance?  ☐ Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*)  ☒ No

NO

SF 95 (Rev. 7-85) BACK

* U.S. GOVERNMENT PRINTING OFFICE: 1989–241-175

ADDITIONAL PAGES

1. I arrived at the Federal Prison Camp at Seagoville FCI on or about March 16, 2016, in continuation of serving my Federal Prison Sentence.

2. I began working in the Laundry Department out in the Warehouse.

3. Beginning on or about November 1, 2016, I was promoted to Warehouse Clerk for Commissary Trust Fund/Warehouse.

4. In the Warehouse there exists Storage 1 and Storage 2 which were used as Freezers for FOOD Service Warehouse, and then were turned over to Commissary Trust Fund/Warehouse.

5. Sometime around April 1, 2017, Storage 1 was shut down as a Freezer and the ceiling and walls began to drop small particles of dark chunky substances and a lighter type dust covering the contents of Storage 1.

6. The contents of Storage 1 were removed, cleaned, and reassembled in the Warehouse Laundry facilities.

7. I was charged with cleaning Storage 1, its contents, and the reassembly as part of my Clerk Duties.

8. I cleaned all the contents personally (shelve system) and assisted in the cleaning of Storage 1 and reassembly.

9. Food Service began to store dry food products in Storage 1 while Storage 2 remained a Freezer storing frozen inmate food products.

10. These food products in Storage 1 continued to be covered with the falling dark chunky substances and lighter dusty substances.

11. On or around June 1, 2017, Food Service converted Storage 1 into a chemical storage room.

12. On or about June 1, 2017, I began to have heavy nose bleeds both while at the Commissary Trust Fund/Warehouse and back at the living quarters.

13. Inmate James Brooks,also experienced the same bleeding nose issues.

14. Other inmates were also suffering upper respiratory issues.

15. On or about July 1, 2017, Food Service Administrator Damon Lynn made the decision to abandon both Storage 1 and 2 based upon neither being able to pass the upcoming annual inspection.

16. Both Storage 1 and 2 had a history of leaking water out from underneath the outer doors.

17. Part of my job duties was to keep the overall appearance of the Warehouse in tip top shape.

18. On or about July 1, 2017, Mr. Lynn surrendered Storage 1 and 2 to Bruce Padgett, the Commissary Trust Fund/Warehouse Administrator.

19. Prior to August 1, 2017, the freezer in Storage 2 broke down for the last time.

20. On or about August 1, 2017, Robert Freeman and Mr. Padgett informed me that Storage 1 and 2 were my responsibility to maintain in overall appearance.

Page 1 of 4

21. Needless to say, on numerous occassions I spent time cleaning both Storage 1 and 2 of the dark chunky substance, and the lighter dusty substance, from all the Bureau of Prisons property for which it covered, that was stored in both rooms, including toilet paper, mattresses, lockers, washers/dryners, Executive Furniture, and Medical Furniture, at various times.

22. On or about September 1, 2017, Mr. Freeman contacted Acting Safety Administrator Mark Christian about the continued falling substances covering both storage 1 and 2 property.

23. On or about September 23, 2017, Assistant Warden Rosales, Facilities Administrator S. Jefferson, Counselor Mike Shelp, and Mr. Christian, visted Storage 1 and 2 and decided to test the debris falling from the ceiling and walls.

24. On or about October 27, 2017, along with inmates Hooper and Perpich, Mr. Christian appeared at the location of Storage 1 and 2 spraying a substance in both Storage 1 and 2 after myself and others removed the BOP property from therein.

25. Mr. Christian informed me and others that the substance was mildew only.

26. Mr. Christian wore a protective suit and mask while spraying both Storage 1 and 2 with inmates Hooper and Perpich.

27. Mr. Freeman then directed me to clean all the removd BOP property and return it to the designated Storage 1 or 2.

28. On or about November 15, 2017, Mr. Freeman instructed me to remove both solid doors to Storage 1 and 2 in effort to combat the falling debris and odor.

29 As of about November 15, 2017, both Storage 1 and 2 are completely open to the elements of the weather due to their position in the breezeway.

30. On or around January 15, 2018, Mr. Padgett has Facilities Supervisor Goen to manufacture metal gate doors that would allow the property stored in Storage 1 and 2 secure while allowing the air to circulate in and out.

31. These gate style doors were installed immediately upon completion.

32. The falling debris of dark chunky substances and ligher dusty substances increased in volume after the doors were removed.

33. On or about July 1, 2018, Mr. Padgett, Bobby Robert, and Mr. Lynn were reporting to Commissary Trust Fund/Warehouse staff and inmates that they were all experiencing significant upper respiratory breathing issues.

34. I was informed by Mr. Lynn and Mr. Roper on or about July 1, 2018, that they had both been diagnosed with asthma for the first time ever.

35. Chris Rees replaces Mr. Christian as the Safety Administrator and on or around September 1, 2018, informed Mr. Freeman that he would have an outside company to test the falling substances in Storage 1 and 2.

36. On October 10, 2018, Rashad Fulce directs me to attach two signs to the gate doors for Storage 1 and 2 informing anyone not to enter.

37. On October 11, 2018, Mr. Fulce instructed me to place two RED signs on both storage 1 and 2, at the direction of Mr. Rees, after I covered both gate doors with thick clear plastic, reading:

"Danger, Asbestos, May Cause Cancer, Cause Damage to Lungs, Authorized
Personnel only. 29 CFR [1910-1001(j)(4)(i)]. C. Rees, Safety Manager
Ext. 4431."

38. On October 11, 2018, Mr. Rees instructed me personally to maintain the
the duck tape seal on both doors.

39. On October 18, 2018, Mr. Rees informed me that the percentage of asbestos
found in both rooms was 10% with the man who determined it standing in front
of both of us.

40. On October 18, 2018, Mr. Rees and the man conducting the tests informed
me and others that the other substance present was MOLD not MILDEW.

41. On or about October 22, 2018, Mr. Rees instructed me to get rid of all my
clothes and bedding immediately due to my lengthy exposure to both Storage
1 and 2 and the air that flowed in and out of both Storage rooms.

42. On or about October 22, 2018, Mr. Rees instructed myself and Mr. Padgett
that the toilet paper, mattresses, washers/dryers, and all other BOP property
was contaminated with asbestos and would need to be abated and destroyed.

43. On October 31, 2018, I received a memorandum reporting the finding of
asbestos containing material in Storage 1 and 2 from Mr. Rees.

44. On or about November 1, 2018, Mr. Lynn informed Mr. Padgett in my presence
of his treatment for being diagnosed with asthma.

45. On November 9, 2018, Nurse Mohon informed me that by November 13, 2018, Dr.
Holla would inform me of what treatment the CDC recommended for my exposure
to the asbestos and mold.

46. On December 10, 2018, I began working at the Grand Prairie, Texas Complex
in the Cadre unit working in Computation and Designation (345), the Human
Resources and Property Acquisition (346), and then in the Regional Director's
Building (344).

47. Between May 6, 2019 through around May 14, 2019, ARC ABATEMENT abated and
removed and destroyed all asbestos and mold contaminated property found in
Storage 1 and 2.

48. On or about May 26, 2019, I was reassigned away from Grand Prairie, Texas
Cadre Unit and reassigned as Town Driver for the Camp.

49. In a September, 2001 Report, the Department of Health and Human Services
found two types of asbestos fibers describing them as "small diameter fibers
and particles that remain suspended in the air for a long time and can be carr-
ied long distances by wind or water before settling down" and "Larger diameter
fibers and particles tend to settle more quickly."

50. 40 CFR § 61.141 reads in relevant part involing asbestos:

"(a) Friable asbestos material, (b) Category I non-friable ACM that has
become friable, (c) Category I non-friable ACM that will be or has been
subjected to sanding, grinding, cutting, or abrading, or (d) Category II
non-friable ACM that has a high probability of becoming or has become
crumbled, pulverized, or reduced to powder by the forces expected to act
on material in the court of demolition or renovation operating regulated
by this subpart."

Page 3 of 4

51. The substance falling from the ceiling and walls found to have 10% asbestos in the mastic, or the adhesive, clearly meets the description of "crumbled, pulverized, or [and] reduced to powder by the forces expected to act on material in the course of demolition or renovation..."

51. 29 CFR § 1910.1001, Appendix H, Section II, entitled Toxicology, explains findings:

> "clinical evidence of the adverse effects associated with exposure to asbestos is present in the form of several well conducted epidemiological studies of occupational exposed workers, family contacts, of workers, and persons living near asbestos mines. These studies have shown a DEFINITE association between exposure to asbestos and an increased incidence of lung cancer, pleural and peritorial mesothelioma, gastrointestinal cancer, and asbestosis. The latter is a disabling fibrotic lung disease that is caused only be exposure to asbestos. Exposure to asbestos has also been associated with an increased incidence of esophagel, kidney, phayngeal, and buccal cavity cancers. As with known chronic occupational diseases, diseases associated with asbestos generally appears 20 years following the first occurrence of exposure. There are no known accute effects associated with exposure to asbestos."

52. 29 CFR § 1910.1001, Appendix H, Section III explains Mesothelioma and lung cancer resulting from exposure is "always fatal."

53. Everything I have read on the subject of asbestos is that it is a progress-ive illness that is worse at the end than in the beginning of diagnosis.

54. The National Emmissions Standard for Asbestos, 40 CFR § 61.140 to 61.157, the Enviromental Protection Agency, is that "Friable asbestos material" is defined as "any material containing more than 1 percent asbestos as determined using...Polorized Light Microscopy that, when dry, can be crumbled, pulverized, or reduced to powder by hand pressure." See U.S. v. Malley, 739 F.3d 1001, 1006 (7th Cir. 2013).

55. I was told the percentage of asbestos was 10% but even at 5% is way more than 1%. .

56. Other witness names are Inmates James Brooks, Yahanna Sherriff, Alejandro Vela, James Brown, and Lindsey Springer.

## DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on November 26, 2019, I placed in the U.S. Mail System located inside the Federal Transfer Center, Oklahoma City, Oklahoma, the above 2 page Claim for Damage, Injury, or Death, wlong with four (4) additional pages, with First Class, Postage Prepaid, to Juan Baltazar, Regional Director, South Central Region, U.S. Armed Force Reserve Complex, 344 Marine Forces Drive, Grand Prairie, Texas 75051, including this declaration of mailing.

Declarant

Page 1 of 1

**E X H I B I T**

**7**

**U.S. Department of Justice**

**Federal Bureau of Prisons**

**South Central Regional Office**

---

*U.S. Armed Forces Reserve Complex*
*344 Marine Forces Drive*
*Grand Prairie, TX  75051*

DATE MAILED:  DEC 10 2019

CERTIFIED MAIL
7018 0360 0000 7587 1601

Lindsey Springer
Register Number 02580-063
Federal Transfer Center
P. O. Box 889801
Oklahoma City, Oklahoma 73189

Re:  Administrative Tort Claim - TRT-SCR-2020-01594

Mr. Springer:

Your claim has been considered for settlement under the Federal
Tort Claims Act, Title 28 U.S.C. Section 2672 et seq., and
authority granted by Title 28, Code of Federal Regulations,
Section 0.172.  You claim government liability in the amount of
ten million one and 00/100 dollars ($10,000,001.00) for personal
injury.

Section 2672 of the Federal Tort Claims Act delegates to each
Federal agency the authority to consider, determine, and settle
any claim for money damages against the United States for loss
of personal property or injury caused by the negligent or
wrongful act or omission of any employee of the agency while
acting within the scope of his office or employment.

Your request for monetary compensation concerns a work-related
injury you reportedly sustained during your confinement at the
Federal Correctional Institution in Seagoville, Texas.  You
allege you were exposed to asbestos and mold when you performed
your work duties as Warehouse Clerk for the Commissary Trust
Fund Warehouse.  You state this exposure has caused ongoing
medical issues.

SPRINGER, Lindsey
Register Number 02580-063
TRT-SCR-2020-01594
Page 2

Claims related to work-related injuries are not compensable
under the Federal Tort Claims Act.  Pursuant to 18 U.S.C.
Section 4126, inmates who sustain work-related injuries are
covered exclusively by the Inmate Accident Compensation system.
The United States Supreme Court held in U.S. v. Demko, 385 U.S.
149 (1965) that this compensation system is an inmate's sole
means of recovering for work-related injuries.  Accordingly,
your claim is denied.

The Environmental and Safety Compliance Administrator at FCI
Seagoville is available to assist you, as appropriate, in your
pursuit of benefits via the Inmate Accident Compensation
program.

If you are dissatisfied with this determination of your claim,
you are afforded six (6) months from the date of the mailing of
this communication within which to bring suit in the appropriate
United States District Court.

Sincerely,

Jason A. Sickler
Regional Counsel

cc: K. Zook, Warden
    FCI Seagoville

JAS/bkv

**E X H I B I T**

**8**



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_South Central Regional Office_
_U.S. Armed Forces Reserve Complex_
_344 Marine Forces Drive_
_Grand Prairie, Texas  75051_

January 7, 2020

Lindsey Springer
Register Number: 02580-063
Federal Transfer Center
P.O. Box 898801
Oklahoma City, OK  73189

Dear Lindsey Springer:

The Federal Bureau of Prisons (BOP) received your Freedom of Information Act/Privacy Act (FOIA/PA) request. Your request has been assigned a number and forwarded to the processing office noted below. Please make a note of the request number and processing office as you will need to include it in any correspondence or inquiry regarding your request. A copy of the first page of your request is attached to help you more easily keep track of your request.

FOIA/PA Request Number:        2020-01626
Processing Office:             SCR

The time needed to complete our processing of your request depends on the complexity of our records search and the volume and complexity of any records located. Each request is assigned to one of three tracks: simple, complex, or expedited. Due to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first-in, first-out basis in relation to other requests in the same track. Your request was assigned to the complex track and placed in chronological order based on the date of receipt. Processing complex requests may take up to nine months. Pursuant to 28 C.F.R. § 16.5(b) and (c), you may narrow or modify your request in an effort to reduce the processing time.

Pursuant to 28 C.F.R. § 16.10, in certain circumstances we are required to charge fees for time spent searching for or duplicating responsive documents. If we anticipate your fees will be in excess of $25.00 or the amount you have indicated you are willing to pay, we will notify you of the estimated amount.  At that time, you will have the option to reformulate your request to reduce the fees. If you requested a fee waiver, we will make a decision whether to grant your request after we determine whether fees will be assessed for this request.

If you have questions regarding the status of your request or anything discussed in this letter, you may contact the SCR or the BOP FOIA Public Liaison, Mr. C. Darnell Stroble at 320 First Street NW, Room 936, Washington, D.C. 20534.

Sincerely,

SCR/vm

SCR\SEA

To:  Director, Bureau of Prisons
     320 First Street, N.W.
     Washington, D.C. 20534

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Transfer Center
      P.O. Box 898801
      Oklahoma City, Oklahoma 73189

**Received**

DEC 1 9 2019

FOIA/PA Section
Federal Bureau of Prisons

## FREEDOM OF INFORMATION ACT REQUEST

Dear Director:

This is my Freedom of Information Act ("FOIA") request under 5 U.S.C. §§
552 and 552(a), and my agreement to pay costs associated herewith in obtaining
all records, all documents, and all information pertaining to the reports
finding asbestos and mold made on or around October 10, 2018, October 18, 2018,
and October 22, 2018 involving the Warehouse located at Seagoville FCI.

Additionally, I request all records, all documents, and all information
pertaining to any bids made to abate both storage rooms that were found to
contain asbestos and mold at the Warehouse. And Finally, I request all records,
all documents, and all information pertaining to ARC Abatement, including its
bids, its invoices, and any certifications made from the abatement ARC Abate-
ment performed Between May 1, 2019, through May 30, 2019 involving the two
storage rooms at the Warehouse in Seagoville FCI.

My date of birth is September 11, 1965.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1),
under the laws of the United States of America, that the foregoing is true and
correct to the best of my knowledge and belief.

_____
Declarant

### DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1),
under the laws of the United States of America, that on December 12,
2019, I deposited the above FOIA request in the U.S. Mailbox located inside the
Federal Transfer Center to the address for the Director listed above.

_____
Declarant

Page 1 of 1

RECEIVED

OCT - 9 2020

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

To:  United States District Court
     Northern District of Oklahoma
     Clerk of Court
     1100 Commerce Street, Room 1452
     Dallas, Texas 75242

From:  Lindsey Kent Springer
       2626 E. 72nd St.,
       Tulsa, Oklahoma 74136

           Re:  Springer v. United States, et al.,

       Dear Clerk of Court:

       Please find enclosed my civil complaint and exhibits as well as my civil

cover sheet and a money order for the filing fees.  I have sent a second complaint

per your instructions.  If there is anything you need from me please let me know.

           Thank You,

           _Lindsey K Springer_        10/6/2020

1 of 1

JS 44 (Rev. 10/20) - TXND (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LINDSEY KENT SPRINGER

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff    Tulsa, Oklahoma
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Washington, D.C.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
None

Attorneys *(If Known)*
Unknown

RECEIVED

OCT - 9 2020

CLERK U.S. DISTRICT COURT

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [x] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1331, 1346(b) and 5 U.S.C. Sections 552, et seq.,

Brief description of cause:
Bivens Action, Tort Claim, and FOIA request for records

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$ 14,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE    Honorable Karen G. Scholder    DOCKET NUMBER    19-CV-1433-S

DATE
*October 6, 2020*

SIGNATURE OF ATTORNEY OF RECORD
*Lindsey K. Springer*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse (Rev. 10/20) - TXND (Rev. 10/20)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

PRESS FIRMLY TO SEAL        PRESS FIRMLY TO SEAL

  

U.S. POSTAGE PAID
TULSA, OK
74136
OCT 09 20
AMOUNT
$26.35
R2304W121404-08


**UNITED STATES POSTAL SERVICE.**

# PRIORITY MAIL EXPRESS



RECEIVED
OCT -9 2020

EL234234858US

**UNITED STATES POSTAL SERVICE.** PRIORITY MAIL EXPRESS™

To schedule free Package Pickup, scan the QR code.




USPS.COM/PICKUP

P S 1 0 0 0 1 0 0 0 0 0 6

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

FROM: Lindsay Springer
2406 E. 72nd St.
Tulsa, Oklahoma 74136
PHONE 918-892-1614

TO: U.S. Dist Court
Clerk of Court
1100 Commerce St. room 1452
Dallas, Texas
ZIP: 75242-



PO ZIP Code: 74136
Scheduled Delivery Date: 10-8-20
Postage: $26.35
Total Postage & Fees: $26.35

Money Back Guarantee to U.S., select APO/FPO/DPO, and select international destinations. See DMM and IMM at pe.usps.com for complete details. Money Back Guarantee for U.S. destinations only. For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.