IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LINDSEY KENT SPRINGER,      )
                            )
            Plaintiff,      )
                            )   No. 3:20-CV-3088-B-BH
                            )
v.                          )
                            )
UNITED STATES, et al.,      )
                            )
            Defendants.      )


LINDSEY SPRINGER'S OBJECTIONS TO THE
MAGISTRATE'S REPORT AND RECOMMENDATION
DATED AUGUST 24, 2021 AND BRIEF IN SUPPORT


By:    Lindsey Kent Springer
       2626 E. 72nd St.
       Tulsa, Oklahoma 74136

-i-

TABLE OF CONTENTS

Table of Authorities……………………………………………………………………-iii-

Objections to the Magistrate's Report…………………………………………………..1

    First Objection…………………………………………………………………..1

    Second Objection………………………………………………………………..1

    Third Objection………………………………………………………………….1

    Fourth Objection………………………………………………………………...4

    Fifth Objection…………………………………………………………………..4

    Sixth Objection………………………………………………………………….6

    Seventh Objection……………………………………………………………….7

    Eighth Objection………………………………………………………………...7

    Ninth Objection………………………………………………………………...8

    Tenth Objection………………………………………………………………..11

    Eleventh Objection……………………………………………………………..11

    Twelfth Objection……………………………………………………………...15

    Thirteenth Objetion…………………………………………………………….16

    Fourteenth Objection…………………………………………………………..18

    Fifteenth Objetion……………………………………………………………..20

    Sixteenth Objection……………………………………………………………21

    Seventeenth Objection…………………………………………………………21

-ii-

Eighteenth Objection…………………………………………………….…………………22

Nineteenth Objection………………………………………………………………..23

Twentieth Objection………………………………………………………………….24

Twenty-First Objection…………………………………………………………...…24

Conclusion………………………………………………………………………………25

Certificate of Service…………………………………………………………………26

-iii-

## TABLE OF AUTHORITIES

Alvarez v. Akwitti, No. 20-50464(5th Cir. May 5, 2021)…………………………………..22

Calhoune v. FBI. F. App 487, 490(5th Cir. 2013)…………….………………………...17

Calle v. FBI, 2011 WL 3820577(N.D. Texas, 2011)……………………………………..20

Farmer v. Brennan, 511 U.S. 825, 833(1994)……………………………………………..9

Hildenbrand v. U.S. Dept of Justice, No. 11-CV-1829(N.D. Texas, 2012)…………….18

Taylor v. Riojas, 529 U.S. ___(2020)……………………………………………………22

United States v. Ho, 311 F.3d 589, 593-94(5th Cir. 2002)………………………………..9

United States v. Muniz, 374 U.S 150, 161(1963)…………………………………………10

Velasquez v. Nielsen, 754 F. Apps 256, 262(5th Cir. 2018)…………………………16,17

Voinche v. FBI, 999 F.2d 962, 963(5th Cir. 1993)……………………………………...6,7

Zigler v. Abbasi, 132 S.Ct. 1843, 1855(2017)……………………………………………22

## STATUTES INVOLVED

5 U.S.C. 551(1)……………………………………………………………………………20

552…………………………………………………………………………...…17

552(a)(4)(B)…………………………………………………………15,16,20

552(a)(4)(C)………………………………………………………………….18

522(a)(6)(C)……………………………………………………………….17,18

-iv-

18 U.S.C. 4001……………………………………………………………………20

    4041……………………………………………………………………20

    4126…………………………………………………………………10,14

    4126(c)(4)……………………………………………………………13,14

28 U.S.C. 636(b)(1)(C)……………………………………………………………1

    1331………………………………………………………………......23

    1346(b)………………………………………………………………..14

## REGULATIONS INVOLVED

28 CFR 301.102…………………………………………………………….…..9

    301.301(c)……………………………………………………………10,12,14

    301.301(d)……………………………………………………………10,12,14

## RULES INVOLVED

Federal Rules of Civil Procedures Rule 7(a)……………………………………….19

    7(b)………………………………………………………19

    15(a)(2)……………………………………...………25

    72(b)(2)………………………………………………1

Local Rule 72.2…………………………………………………………………1

## CONSTITUTIONAL PROVISIONS INVOLVED

Eighth Amendment………………………………………………………….4,23

-v-

MISC

FOIA……………………………………………………………………15,16,20

FTCA…………………………………………………………………...11,13,14

IACA………………………………………………………………9,11,13,14

LINDSEY SPRINGER'S OBJECTIONS TO THE
MAGISTRATE'S REPORT AND RECOMMENDATION
DATED AUGUST 24, 2021 AND BRIEF IN SUPPORT

Lindsey Kent Springer ("Springer") files his objections to the Honorable Magistrate's Report and Recommendation dated August 24, 2021. These objections are presented pursuant to Federal Rules of Civil Procedures Rule 72(b)(2), 28 U.S.C. Section 636(b)(1)(C), and Northern District Local Rule 72.2.

**First Objection:**

The R and R notes a reference to Standing Order 3-251. Doc. 31, pg. 1 (n.1). However, Standing Order 3-251 with reference to Honorable District Judge Jane Boyles indicates that in "fee pd pro-se" cases and controversies that no referral to a Magistrate Judge is authorized. There is a reference to "except pris" but whether this phrase means "except prison" or "except in prison," none of these would trigger the Magistrate to issue his R and R. Springer's address indicates that he no longer resides in any federal prison for purpose of standing order 3-251.

Springer requests this Court reject the R and R in this regard.

**Second Objection:**

The Magistrate's R and R explains it is addressing the United States' Motion to Dismiss Springer's "FIRST AMENDED COMPLAINT." As Springer clearly points out in his opposition to that Motion, Springer has not filed an "Amended Complaint," Doc. 18, pg. 6-7, and, though objectionable, the Magistrate recommends Springer not be given the opportunity to amend his complaint. Doc. 31, pg. 39. Springer requests this Court reject the R and R in this regard.

**Third Objection:**

The Magistrate Reports that "Plaintiff Lindsey Kent Springer claims that he was exposed

to asbestos and mold while working in a warehouse at the Federal Correctional Institution in Seagoville, Texas (FCI- Seagoville), where he was incarcerated. (doc. 3 at 1.)" Doc. 31, pg. 1.

While the finding Springer was inprisoned at FCI Seagoville is undoubtedly correct, Springer's allegations of asbestos and mold exposure were not limited to Springer "while working in a warehouse at" FCI Seagoville.  In fact, Springer's Complaint explains his exposure was primarily away from work.

To understand this allegation of fact the Court must presume there is 7 days in a week, and 24 hours in a day.  Springer only worked Monday through Friday at the Warehouse.

For instance, Springer stated in his actual Tort Claim that Springer's damage occurred while Springer was not at work:

> "'While serving my Federal Sentence at the Federal Prison Camp at FCI Seagoville, I was exposed to more than 500 days of cancer causing asbestos and breath-taking mold which I breathed in for the duration, got in my hair, clothes and was carried from the warehouse, the cite of the ACM and Mold, over into the living quarters where I was directed by staff to replace all my bedding and cloths(sic) with new ones.'  Doc. 3, pg. 70." Doc. 18, pg. 22

In Springer's actual Complaint, Springer alleges certain products and property were distributed away from the Warehouse covered in Asbestos and Mold.  Doc. 3, pg. 5, 30.

Each of these categories were clearly alleged to have been  covered in friable asbestos and breath taking mold distributed throughout FCI Seagoville which included the Camp where Springer resided a majority of his time at FCI Seagoville.

Though Springer worked at the Warehouse from 7:30 to 3:30, this left 16 hours a day Monday through Friday, and all weekend long, that Springer was exposed to friable asbestos and mold outside of the Warehouse.

Springer alleged Mr. Rees instructed Springer to replace all Plaintiff's clothes and bedding due to Springer's extended exposure to 10% Asbestos and Breathtaking Mold with direction to other inmates to do the same.  Doc. 3, pg. 14.

Springer alleged that beginning about May 6, 2019, and continuing for several days, ARC Abatement performed abatement procedures in both storage rooms.  Doc. 3, pg. 17.

Where the issue is where did Springer receive the most exposure to his person of Asbestos and Mold,  more than two thirds of Springer's  was served outside the Warehouse and at places where asbestos and mold had been trafficked daily to and from.

The threat caused by Asbestos and Mold is to the "lungs." Doc. 3, pg.  13 and 39.

Small diameter fibers and particles can "be carried long distances" while larger diameter fibers "tend to settle more quickly." Doc. 3, pg. 20.

Springer clearly alleged his exposure was more than 365 days and in some parts at least 500 days. Doc. 3, pg. 3-4.  <u>AND THIS MEASURE WAS IN DAYS NOT HOURS IN A DAY.</u>

The Magistrate seems to accept the travel of the Asbestos and Mold. Doc. 31, pg. 7(("Afterwards, the new safety administrator instructed Plaintiff to replace his clothes and bedding due to the asbestos and mold exposure and advised him that materials inside the storage areas would need to be abated and destroyed due to asbestos contamination. (*Id.*)")  The Magistrate clearly and incorrectly focussed on the few hours a day of Springer's exposure in the Warehouse and not hardly any on the majority of hours of exposure outside the Warehouse.  The Magistrate's Report does finds generally that Springer worked 5 days a week. Doc. 31, pg. 8.

Springer requests this Court reject the R and R in this regard.

3

**Fourth Objection:**

Springer objects to the Magistrate making a finding of fact as to where Springer was breathing in the Asbestos and Mold.  Doc. 31, pg. 1.  Springer demands a jury trial on every fact in dispute.   Though the Magistrate recommends factual findings are not being made, his finding Springer was exposed "at the Warehouse" only, is doing just that.

Springer requests this Court reject the R and R in this regard.

**Fifth Objection:**

The Magistrate Reports that Springer's claims against the United States and the Individual Defendants is solely in regard to the violations of the Eighth Amendment. Doc. 31, pg. 2. This is incorrect. The Eighth Amendment is a reference to cruel and unusual punishment being prohibited.

Springer alleged the United States "exposed Plaintiff to more than 500 days of Airborne, Friable, Asbestos and Mold during Plaintiff's serving his Federal Sentence at Seagoville FCI's Satellite Camp. Doc. 3, pg. 3-4.

Springer alleged that the United States VIOLATED Springer's Eighth Amendment Rights to be free from cruel and unusual punishment causing Plaintiff to be subjected to Friable, Airborne, Asbestos, and Breath-Taking, Asthma Inducing, Mold, between about April 1, 2017, through and including up to October 22 2018, and beyond." Doc. 3, pg. 30.

Plaintiff further requested Judgment against the United States for (1) violating Plaintiff's Eighth Amendment Rights "AND" (2) for causing Plaintiff to suffer an unreasonable risk of serious damage to Plaintiff's future health and the loss of capacity of life in the future with just

4

compensation for damages in the amount of 10,000,001.00." doc. 3, pg. 30-31.

Springer alleged Mr. Christian and Mr. Rosales "acted deliberately indifferent to Plaintiff's serious safety and medical needs, AND in violation of Plaintiff's Eight Amendment Rights where he subjected Plaintiff to more than 365 days of Airborne, Friable, Cancer Causing Asbestos, and Breathtaking, Asthma Inducing Mold..." Doc. 3, pg. 4.  There is no question the term "AND" means in addition to.

Springer also alleged Mr. Christian and Mr. Rosales "acted deliberately indifferent to Plaintiff's Safety and Medical needs needs when he was aware of hazzardous materials falling from the walls and ceilings in both Storage 1 and 2 subjecting Plaintiff to a substantial risk of serious harm and disregarding that risk by failing to take reasonable measures to abate the hazardous materials and protect Plaintiff from exposure  to such hazardous materials."  Doc. 3, pg. 22-23, 25.

In Springer's  request for Judgment, Springer requested it be against Mr. Christian and Mr. Rosales for violating Plaintiff's Eight Amendment rights "AND FOR CAUSING PLAINTIFF TO SUFFER AN UNREASONABLE RISK OF SERIOUS DAMAGE AND INJURY TO PLAINTIFF'S FUTURE HEALTH AND THE LOSS OF CAPACITY OF LIFE IN THE FUTURE WITH JUST COMPENSATION FOR DAMAGES IN THE AMOUNT OF $ 4,000,000.00 FOR SUCH VIOLATIONS."

Here the "violations" term is plural referencing both the Eighth Amendment's prohibitions and the risk to Springer's future health as general but separate parts to each Count.

In the "Relief" section on page 34 of Springer's Complaint Springer spells out the relief he

5

seeks. Doc. 3, pg. 34.

Springer requests this Court reject the R and R in this regard.

**Sixth Objection:**

The Magistrate finds that "Administrator tested the black substance in both storage areas on October 20, 2017, and found that the substance and smell was only mildew. Doc. 31, pg. 3. He repeats this finding. Doc. 31, pg. 6 ("After Administrator tested the areas and found only mildew…") And at Doc. 31, pg. 36(Springer "alleges that Administrator tested the storage rooms but found that only mold was present..")

That is not what Springer alleged.  Springer alleged "Mr. Christian decided to test the black substance in both rooms and determined that, on or about October 20, 2017, the substance falling in both storage 1 and 2 was mildew only." Doc. 3, pg. 11.

The Magistrate correctly found that Mr. Rees "reject[ed] Mr. Christian's mildew prognosis." Doc. 31, pg. 4 (citing Doc. 3, pg. 13).  This is so because it was simply false what Mr. Christian said.

Springer alleged that Mr. Christian "acted deliberately indifferent to Plaintiff's safety and medical needs when he was aware of the hazardous materials falling from the walls and ceilings in both Storage 1 and 2 subjecting Plaintiff to a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the hazardous material and protect Plaintiff from exposure to such hazardous materials." doc. 3, pg. 22-23.

Springer made as clear as he could that the actual testing by Mr. Rees shows there was no testing by Mr. Christian and that had Mr. Christian tested, or had tested both rooms, he would not

6

have found, or any outside company, mildew only or mildew at all but Asbestos and Mold.

And as Springer alleged, even the testing in October of 2018 was conducted with water being prayed in the air of the testing area which could only be to minimize the finding of hazzardous materials in the air by weighing that airborn material down. Doc 3, pg. 14.

Springer requests this Court reject the R and R in this regard.

**Seventh Objection:**

The Magistrate's Report finds Mr. Rees tested both Storage Rooms. Doc 31, pg. 4 ( On or about October 9, 2018, the new safety administrator tested the substances falling from the ceilings.).  Springer's Complaint did not allege Mr. Rees tested anything.

Springer alleged Mr. Rees "would have the falling substance from the walls and ceilings in Storage 1 and 2 tested immediately…" Doc. 3, pg. 13.  Springer alleged that on Mr. Rees appeared at the Warehouse "with an outside company representative THAT TESTED THE SUBSTANCE falling in both Storage 1 and 2 from the walls and ceilings." Doc. 3, pg. 13.

At other times the Magistrate seems to get it correct when he finds  "[T]hese findings were then confirmed by the person that conducted the testing. (*Id.*) On October 22, 2018, another company conducted another sample.(*Id.*)." Doc. 31, pg. 7.

Springer requests this Court reject the R and R in this regard.

**Eighth Objection:**

The Magistrate's Report finds that the Bureau of Prisons (BOP) "redacted certain portions of responsive documents" before responding out of time to Springer.  Doc. 31, pg. 9. However, the Magistrate correctly states that out of 100 pages the BOP  withheld 86 pages

7

"entirely." Doc. 31, pg. 9.  Although redactions did occur on 9 of the 100 pages, withholding 86 pages "entirely" is not redacting the 86 pages.

Springer requests this Court reject  the R and R in this regard.

**Ninth Objection:**

The Magistrate finds and reports that this Court lacks subject matter jurisdiction over Springer's Federal Tort Claim where Congress has provided coverage under the IACA because it was "sustained in...any work activity in connection with the maintenance or operation of the institution in which the inmates are confined" and was "proximately caused by the actual performance of the inmate's work assignment."  Doc. 31, pg. 13.

This is based upon the same error addressed above in Objection # 3.

The Magistrate Reports that Springer claims  he was exposed to asbestos and mold while working in a warehouse at the Federal Correctional Institution in Seagoville, Texas (FCI-Seagoville), where he was incarcerated. (doc. 3 at 1.) Doc. 31, pg. 1.

While the finding Springer was inprisoned at FCI Seagoville is undoubtedly correct, Springer's allegations of asbestos and mold exposure were not limited to Springer "while working in a warehouse at" FCI Seagoville.  In fact, Springer's Complaint explains his exposure was primarily away from the Warehouse and work.

Springer stated in his actual Tort Claim that Springer's damage occurred while Springer was not at work. Doc. 18, pg. 22 and Doc. 3, pg. 70.

Springer's Complaint  Springer alleges products were distributed throughout the Prison covered in Asbestos and Mold.  Doc. 3, pg. 5, 30.

8

Though Springer worked at the Warehouse from 7:30 to 3:30,  his exposure is alleged to have continued 16 more hours a day Monday through Friday, and all weekend long, where Springer was exposed to asbestos and mold outside of the Warehouse.

Springer bedding and clothes were covered in  10% Asbestos .  Doc. 3, pg. 14.

Where the issue is where did Springer breath in the most Asbestos and Mold more than two thirds of Springer's time credited against his federal sentence was served outside the Warehouse and at places where asbestos and mold had been trafficked daily.

The threat caused by Asbestos and Mold is to the "lungs." Doc. 3, pg.  13 and 39 .

Springer clearly alleged his exposure was more than 365 days and in some parts at least 500 days. Doc. 3, pg. 3-4.  AND THIS MEASURE WAS IN DAYS NOT HOURS IN A DAY.

The Magistrate briefly, acknowledged that the Asbestos and Mold had traveled outside the Warehouse area and it was in that area Springer's exposure was dominant. Doc. 31, pg. 7 ("Afterwards, the new safety administrator instructed Plaintiff to replace his clothes and bedding due to the asbestos and mold exposure and advised him that materials inside the storage areas would need to be abated and destroyed due to asbestos contamination. (*Id.*)")

Springer opposed the United States Motion to Dismiss arguing that "[A]lthough the IACA MAY provide compensation for a work-related ***accidental*** injury, as the Government points out, that "injury" must be "proximately caused by the actual performance of the inmate's work assignment." 28 CFR Section 301.102.

The government is not free to let the state of nature take its course. Farmer v. Brennan, 511 U.S. 825, 833(1994). Today's society does not tolerate asbestos and mold exposure.  U.S. v. Ho,

9

311 F.3d 589, 593-94(5th Cir. 2002).

In U.S. v. Muniz, 374 U.S. 150, 161(n.17)(1963) the Court explained '[T]he predecessor of 18 U.S.C. Section 4126 provided compensation in 1946 only for prisoners working for Federal Prison Industries, Inc. Only 20% of all federal prisoners were so engaged. 1957 Rep. Atty. Gen. 409." "***And even those prisoners would not have been covered for injuries sustained outside working hours***." Id.

Congress' 1961  action under 18 U.S.C. Section 4126,   extended compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution where confined but did not provide  for ***nonwork injuries***,

Springer's Complaint clearly alleges he was exposed to Asbestos and Mold by the United States occurring while Springer was not at work.  Doc. 3, pg. 70

28 CFR Section 301.301(c) and (d) entitled "Compensable and non-compensable injuries" disallows claims like Springers in part:

**(c)**   Compensation is not paid for injuries sustained during participation in institutional programs (such as programs of a social, recreational, and community relations nature) **or from maintenance of one's own living quarters. Furthermore, compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area).**

**(d)**   Injuries sustained by **inmate workers willfully** or with intent to injure someone else, or injuries suffered in any activity **not related to the actual performance of the work assignment are not compensable**, and no claim for compensation for such injuries will be approved. **Willful violation of rules and regulations may result in denial of compensation for any resulting injury**.

Here Springer has both exposure at work for 7 hours a day Monday through Friday and exposure in his living quarters 16 hours a day, 5 days a week, and 24 hours a day on the weekends and holidays during the relevant time period.

Once the injury of breathing in of Asbestos and Mold contaminated air is understood, then the place where the injury occurred becomes academic. All this Court must do is follow the Asbestos and Mold.

Springer requests this Court to reject the R and R in this regard.

**Tenth Objection:**

The Magistrate finds Springer opposes the IACA and instead seeks payment for damages for constitutional tort violations under the FTCA. Doc. 31, pg. 14((citing doc. 18 at 29- 30.). This is incorrect in part.

Seeking payment for violating the Constitution of the United States is not the same as seeking payment for unacceptable treatment involving the health and safety by federal employees of a prisoner.  Bivens sets forth the payment for Constitutional Violations of individual persons and the the FTCA set forth the payment scheme for the type of damages Springer seeks from the United States.

Springer requests this Court to reject the R and R in this regard.

**Eleventh Objection:**

The Magistrate finds that "[A]lthough the Fifth Circuit has not specifically considered the issue, other courts have rejected similar arguments in the context of state workers' compensation schemes, upon which *Demko* recognized that the IACA is patterned." Doc. 31, pg. 14.

11

The issue is strait forward for the purpose of determining subject matter jurisdiction. 28 C.F.R. § 301.301(c) and (d), entitled "Compensable and non-compensable injuries," provides limitations upon the reach of the IACA as a source for payment to federal prisoners in leu of damages paid out of the FTCA.  It reads in relevant part:

> "Compensation **is not** paid for injuries sustained during participation in institutional programs (such as programs of a social, recreational, or community relations nature) or from maintenance of one's own living quarters. Furthermore, compensation **shall not be paid for injuries suffered away from the work location** (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area)."

To expand on the Magistrate's position, the Report suggests that compensation is measured by the location from which the Asbestos and Mold first appeared.  Doc. 31, pg. 14-16. However, the IACA clearly speaks of the "injuries sustained" and "injuries suffered away from the work location."

Though the Magistrate hints toward Springer's citation of 28 CFR  § 301.301(d), Doc. 31, pg. 14, his Report falls short of addressing the language of section 301.301(d).  But the scheme under 301.301 is taken together:

> "Injuries sustained by inmate workers willfully or with intent to injure someone else, or injuries suffered in any activity not related to the actual performance of the work assignment are not compensable, and no claim for compensation for such injuries will be approved. Willful violation of rules and regulations may result in denial of compensation for any resulting injury."

Here there is no question Springer was performing a work assignment that did not include Asbestos or Mold.  At no time did anyone make Springer aware of the presence of Asbestos or

Mold in the Storage rooms.  Doc. 3, pg. 7-2("At no time…did Plaintiff…receive instruction… that the substance being cleaned contained Cancer Causing Asbestos or Breath-Taking Mold.").

Everything under the IACA hinges upon the injury and not the source of the injury.  An Asbestos injury can remain ongoing. See Doc. 3, pg. 24(citing 29 CFR  § 1910.1001).

The language of the Federal Regulation at 301.301 should control the Court's determination of whether, and to what extend, the IACA and FTCA determine this Court's subject matter jurisdiction over Springer's injuries.

Another import reason the FTCA controls here is that under the FTCA Springer had only two years to make his claim while under the IACA Springer would need wait until 45 days before he concludes his federal sentence.  Obviously if the BOP were to argue that Springer's injuries fall outside of the IACA, Springer would be left with no remedy whatsoever.

Congress envisioned a remedy that worked and not one in name only.

The Magistrate's Report that this Court's subject matter jurisdiction should be based upon States, other than Texas, having worker compensation laws, is not the law of the United States.

Subject Matter Jurisdiction is for Congress, and Congress alone, to determine.

18 U.S.C. § 4126(c)(4) reads:

"in paying, <u>under rules and regulations</u> promulgated by the Attorney General, compensation to inmates employed in any industry, or performing outstanding services in institutional operations, not less than 15 percent of such compensation  for any inmate shall be reserved in the fund or a separate account and made available to assist the inmate with costs associated with release from prison, and compensation to inmates or their dependents <u>for injuries suffered in any industry or in any work activity</u> in connection with the maintenance or operation of the institution in which the inmates are confined."

The injury suffered must come from (1) any industry, or (2) any work activity.

Section 4126 clearly places rules and regulations promulgated by the Attorney General as the determining factor of whether the IACA applies or not.

The issue is not where did a substantial part of the exposure occur. Doc. 31, pg. 14-15. The facts of this case are unique and demonstrate injuries at work and injuries in the living quarters outside of work.  Under 28 CFR § 301.301(c) and (d), a determination as to whether the IACA, or FTCA, applies, requires fact finding as to where the injuries that give the Court subject matter jurisdiction took place and where they did not.

Springer meets all Six of these prongs under  28 U.S.C. § 1346(b) and neither the United States, nor the Magistrate say otherwise.  Doc 31, pg. 12

Congress intended claims like Springers to be under the FTCA and not the IACA but to the extend a bifurcating is required, then Springer should be authorized to maintain both claims under the FTCA for his breathing of Asbestos and Mold in places outside of the Warehouse and under the IACA while breathing Asbestos and Mold during work. The injury suffered does not "come from" any industry and only leaves Section 4126's  "any work activity" to be considered.

Section 4126's phrase "for injuries suffered…in any work activity" would require Springer be informed, and given the option to work, in an Asbestos and Mold infested enviroment or activity.  The phrase "work-related" does not appear in  §  4126(c)(4).

But here, Springer was never given that option and it would appear 28 CFR  § 301.301(c) and (d) precludes most of Springer time breathing in Asbestos and Mold from the compensation scheme of the IACA.

The injury involving Asbestos and Mold is not its falling or becoming disturbed as it did

14

in this case and became friable, but rather damage comes from breathing it into the lungs.

Neither Oklahoma State law, Wisconsin State law, or any other State's law govern Springer's injuries sustained in Texas.

And finally, the Magistrate suggests that Springer cannot prove the coming and going rule applies but this also ignores that Asbestos and Mold traveled with Springer and others in their cloths, jacket, hat, and even hair, and the unique nature of being imprisoned at a prison camp. Some inmates work in the living quarters while others do not (like Springer).

Springer requests this Court to reject the R and R in this regard.

**Twelfth Objection:**

The Magistrate's Report finds that Springer's Complaint (not First Amended Complaint) against the BOP under the FOIA was that they had not timely responded to Springer's FOIA requests and that now that they have responded to Springer's FOIA request, albeit after the Complaint was filed, that response mooted Springer's Complaint. Doc. 31, 17-19

The Magistrate finds that Jurisdiction in a FOIA suit is based on the plaintiff's showing an agency has (1) improperly (2) withheld (3) agency records.Doc 31, pg. 17. " If an agency improperly withholds agency records, a district court has jurisdiction to enjoin it from withholding those records and to order their production.5 U.S.C. § 552(a)(4)(B). Doc. 31, pg. 17.

To this day the BOP has improperly withheld agency records from Springer. The Magistrate described the 86 documents as "86 pages **had to be withheld entirely**" and explained that "at the time Plaintiff filed this suit, the BOP had not responded to the request, but it subsequently responded in January 2021. (*See* doc. 15-1 at 1.)" Doc. 31, pg. 9.

15

So, 86 documents were completely withheld and yet the Magistrate finds that withholding of the 86 documents qualifies as a "response" under the FOIA.

This is not what Congress said in the terms of the FOIA.

5 U.S. C. Section 552(a)(4)(B) reads:

"On complaint, the district court of the United States …has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant…."

Does withheld mean two different things when weighing Section 552 with what the Magistrate found the BOP did in withholding 86 documents "entirely"?   Springer thinks the better course under the FOIA is to provide one meaning to "withheld" and "withhold" and when blank documents are tendered to the complainant that such record is continuing to be withheld as it was when it was not produced.

This Court has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

`      The Magistrate even found the BOP had contradicted itself in its legal argument that it had provided the records Springer sought when it decided it had not. Doc. 31, pg. 10.

Springer requests this Court reject the R and R in this regard.

**Thirteenth Objection:**

The Magistrate finds that a "timeliness claim is rendered moot by an intervening response. *Id.* (*Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993)); *see also Velasquez v. Nielsen*, 754 F. App'x 256, 262 (5th Cir. 2018) ("The district court found that appellants' [FOIA] untimeliness claims were mooted by DHS's belated response in producing the requested information. This

16

holding is correct."). Doc. 331, pg. 18-19.

But in Velasquez the actual records of information were produced such that there was no controversy. However, Section 552(a) only requires the record for which the controversy is raised be withheld.

The Magistrate further found that "[I]f an agency fails to respond to a FOIA request in a timely manner, the requestor is deemed to have exhausted its remedies and may bring an action in federal court." *Id.* at *4 (citing *Calhoun v. FBI*, F. App'x 487, 490 (5th Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)). Doc. 31, pg. 18

That should be the end of the jurisdictional enquiry and this Court should find as the Magistrate did, that at the time of the filing of the complaint in this case the BOP's time to response had lapsed by a considerable amount of time. Doc. 31, pg. 9.

And the Magistrate found that "[I]f an agency **timely** responds but the response is deficient, the requester must challenge the adequacy of the response administratively before filing suit." *Id.* (citing Voinche, 999 F.2d at 963. Doc. 31, pg. 18. But the Magistrate found the BOP did not timely respond. Doc. 31, pg. 9.

This leaves Voinche. The Magistrate did not address Springer's argument under Voinche. The problem is that Springer did appeal the January 11, 2021 withholding of 86 records and 9 partial. See Lindsey K. Springer declaration at 1 and attachment B. In Voinche , 999 F.2d at 963, the Fifth Circuit held that *a FOIA case only becomes moot when the agency provides something during litigation and the requesting party raises no administrative objection on appeal to the something provided.* See Voinche, 999 F.2d at 963("Although Voinche exhausted his

17

administrative remedies pursuant to § 552(a)(6)(C) in order to challenge the tardiness of the FBI's response, he has not challenged the adequacy of the FBI's response administratively. Insofar as Voinche challenged the tardiness of the FBI's response, his claim was rendered moot by the FBI's response to his request.")

Where, however, the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. Hildenbrand v. U.S. Dep't of Justice, No. 11- CV-1829-N, slip op. at 6 (N.D. Tex. Aug. 21, 2012) (Godbey, J.) ("Hildenbrand I")."

Had Springer not appealed the January 11, 2021 withholding of 86 records completely and 9 partial, by the BOP, then that would be viewed as Springer accepting the reason for the withholding of records. However, Springer did appeal that improper withholding, which was a year late and only during litigation, and therefore Springer has exhausted his administrative remedies under the FOIA and his claims are not moot.

Even though more records may be forthcoming, it is the district court's jurisdiction that has been established over all records sought by Springer and improperly withheld by the BOP.

Springer requests this Court reject  the R and R in this regard.

**Fourteenth Objection:**

The Magistrate found that the Federal Rules of Civil Procedure override the FOIA specifically where the FOIA places different requirements upon litigation than normal federal litigation. Doc. 31, pg. 19.

5 U.S.C. Section 552(a)(4)(C) reads:

18

"Notwithstanding any other provision of law, the defendant <u>shall serve an answer or otherwise plead to any complaint made under this subsection within thirty days</u> after service upon the defendant of the pleading in which such complaint is made, unless the court otherwise directs for good cause shown."

Congress gives the United States Agency subject to FOIA two options. First is to file "an answer" and second is to "otherwise plead."   A Motion to Dismiss is neither.

The Federal Rules of Civil Procedures  Rule 7 entitled "**Motions and Other Papers**"  states:

   (a)     PLEADINGS. Only these pleadings are allowed:
   (1)     a complaint;
   (2)     an answer to a complaint;
   (3)     an answer to a counterclaim designated as a counterclaim; (4) an answer
           to a crossclaim;
   (5)     a third-party complaint;
   (6)     an answer to a third-party complaint; and (7) if the court orders one, a
           reply to an answer.

Rule 7(b) distinguishes Motions as separate from pleadings and answers:

Federal Rules of Civil Procedures Rule 10, 11, and 15, also distinguish a "pleading" from a "motion." The BOP filed a Motion to Dismiss, Doc. 14, which under the unique circumstances of the FOIA they are forbidden by law from filing first.  Congress has withheld that option from the Government under the FOIA itself until after an answer or pleading is filed. For this reason alone the Motion to Dismiss should be denied.

The Magistrate points out that Springer's argument under the FOIA would prevent a Motion to Dismiss for lack of subject matter jurisdiction even when the Court does it on its own. Doc. 31, pg. 19.

Springer made no such argument then and makes none now.  Congress gave the district court subject matter jurisdiction over withheld records and to order their production.  Whether an

19

Answer is first filed, then a Motion to Dismiss for lack of subject matter jurisdiction is sought, will not change the ability of the Court to procede according to Congress's wishes under the FOIA.  The Agency could seek an extension as they received in this case by Springer's consent.

Where "the jurisdictional attack . . . is inextricably intertwined with the merits of [the] FOIA action, because in order to decide both mootness and the merits of [the] FOIA action, the Court must decide whether [BOP] improperly withheld agency records under FOIA section 552(a)(4)(B)." Id. at 6 (quoting Calle v. F.B.I., 2011 WL 3820577, at *3 n. 1 (N.D. Tex. Aug. 5, 2011) (Ramirez, J.))

Springer requests this Court reject the R and R in this regard.

**Fifteenth Objection:**

The Magistrate finds that Springer  cites no authority for the proposition that a mere "employee for Appointment-Clause purposes may not tender a decision  on a FOIA request." Doc. 31, pg. 21.

The FOIA at 5 U.S.C. 551(1)  defines "agency" to means "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, …."  NO MERE EMPLOYEE HAS EVER BEEN CONSIDERED AN "AUTHORITY OF THE GOVERNMENT OF THE UNITED STATES." Ever!

Springer identified the BOP's authority was in the Attorney General and Director.  See Doc. 19, pg. 15(citing 18 U.S.C. Sections  4001 and 4041).

Responding under the FOIA is the duty of the Federal Agency and is the exercise of

20

significant authority of the United States and must be conducted by a person authorized by federal law to do so.  The statute clearly places the BOP in the control of the Director and Attorney General to which appoints the Director.

Springer timely challenged whether Ms. Geller was authorized by law to withhold the 86 records, and 9 partial, from Springer, or otherwise address Springer's FOIA requests. Doc. 19, pg. 13-15.

Springer requests this Court reject the R and R in this regard.

**Sixteenth Objection:**

The Magistrate finds Springer filed a complaint and an "operative complaint." Doc. 31, pg. 24.  Springer is not sure what an "operative complaint" is but Springer only filed one complaint. If there is a second, or an amended one, neither Springer, nor this Court's docket, identifies its existence.

Springer requests this Court reject the R and R in this regard.

**Seventeenth Objection:**

The Magistrate finds Springer takes no issue with the medical treatment Springer did not receive. Doc. 31, pg. 28-29("Plaintiff does not take issue with the medical treatment that he received, however, and he did not name any medical officer as a defendant. His allegations are centered upon the failure to provide a safe working environment.")

The Magistrate is incorrect.  First, Plaintiff alleged that Plaintiff sought medical treatment and was tendered silence. Doc. 31, pg. 8.  Medical issues are not limited to the "medical officer" as the Magistrate posits.  Instead, in the BOP, the Safety Administrator controls many of the

21

medical issues involving hazardous materials like asbestos and mold.  And as the R and R acknowledges, the administrative remedy was to the Warden and not the medical officer.

Springer requests this Court reject the R and R in this regard.

**Eighteenth Objection:**

The Magistrate finds special reasons counsel against Springer's Bivens claims. Doc. 31, pg. 31.  However, in Taylor v. Riojas, 529 U.S. ___(2020), the Supreme Court found a Texas Prison Guard was not to be shielded with qualified immunity in a money damage case where the inmate had been held 6 days in cells with sewage spread throughout.  Taylor was remanded to the Fifth Circuit.

Had special factors counsel against allowing Taylor to maintain his damage action then there would have been no reason to overturn the Fifth Circuit or the finding the shield of qualified immunity had been lifted.

500 days of breathing Asbestos and Mold certainly qualifies  as egregious as the 6 days of cruel punishment that Mr. Taylor received.

In *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1855 (2017) (citation omitted) the Supreme Court directed the other remedy available was to file a Habeas Corpus Action.  Springer did just that and on July 22, 2019, the Honorable District Judge Karen Scholer issued an Order directing Springer to file a civil rights action in this Court. See In Re Springer, 19-CV-1433, Doc. # 9. Springer did just that and  now the Magistrate recommends Judge Scholer was in error.

"[A] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Alvarez v. Akwitti, Case No. 20-50464 (5th Cir. May

5, 2021). An inmate establishes an Eighth Amendment violation by showing that he was "incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were "deliberately indifferent" to his safety. *Id.*

Springer's hazardous material exposure claims are about as egregious as such injury could be conceived.   Springer brought his claims against Mr. Christian and Mr. Rosales under Bivens but also under 28 U.S.C. Section 1331.

Even if this Court were to find Bivens is a dead letter, Springer has sufficiently identified his claims outside of Bivens against both Mr. Christian and Mr. Rosales for their causing Springer to suffer an unreasonable risk of serious damage and injury to Springer's future health and the loss of capacity of life in the future with just compensation for damages in the amount of $ 4,000,000.00.  Doc. 3, pg. 23 and 26.

Springer requests this Court reject the R and R in this regard.

**Nineteenth Objection:**

The Magistrate finds the BOP's administrative remedy program, which does not pay damages, is somehow a scheme that supplants 28 U.S.C. Section 1331 and the Bivens Remedy. Doc. 31, pg. 32.

There is nothing about the Administrative Remedy Program of the BOP that somehow supplants the Federal Court remedy under Section 1331 and Bivens.  Currently, inmates must exhaust the administrative remedy before brining action in Federal Court.  But saying the buck stops with the Central Office and no Judicial oversight is required or intended by Congress is contrary to federal law and the Constitution of the United States.

23

Violating State Law, or Federal Law, or the Constitution involving a Federal Prisoner, has always been subject to scrutiny by the United States District Courts and where the Court says otherwise that pushes all actions directly into the Supreme Court directly involving the most vulnerable citizens of the United States of America in the capacity of a federal prisoner.

Springer requests this Court reject the R and R in this regard.

**Twentieth Objection:**

The Magistrate finds Mr. Rosales lacked the deliberate indifference required based upon the test conducted by Mr. Christian and the finding of mildew only. Doc 31, pg. 37.

This finding suffers from the same problem Springer raised with that of Mr. Christian. Springer did not allege Mr. Christian ever tested either Room and nor did Springer allege the results of any testing shows mildew only.

Springer alleged "Mr. Christian decided to test the black substance in both rooms and determined that, on or about October 20, 2017, the substance falling in both storage 1 and 2 was mildew only." Doc. 3, pg. 11.

So the deliberate indifference analysis by the Magistrate was faulty as to both Mr. Christian and Mr. Rosales.  Springer alleged the actual testing did not take place until Mr. Rees brought in outside companies to conduct the testing in both rooms.  Doc. 3, pg. 13-14.

Springer requests this Court reject the R and R in this regard.

**Twenty-First Objection:**

The Magistrate finds Springer's allegations are infirm and do not warrant amendment. Doc. 31, pg. 37. Springer objects the infirm designation and the 21 objections above show the

24

incorrect posture of the Magistrate. However, depending on what the district court does with these objections, Springer wishes to have the opportunity to consider amending his complaint once as a matter of course.  Federal Rules of Civil Proedures Rule 15(a)(2) directs the district court to freely grant leave to amend and where the statute of limitations is at play Springer needs the opportunity to determine whether he would amend to the Court's satisfaction.

Springer requests this Court reject the R and R in this regard.

CONCLUSION

Springer respectfully requests this Court to find in Springer's favor with each and every objection raised by Springer herein, and above, and overrule the Findings of Facts, Report, and Recommendations by the Magistrate Judge to grant the Motion to Dismiss by the United States, BOP, and Mr. Christian and Mr. Rosales, and deny the same, and order an answer be filed by each Defendant without any further delay.

Respectfully Submitted,


/s/ Lindsey K. Springer
Lindsey Kent Springer
2626 E. 72nd St.
Tulsa, Oklahoma 74136
918-892-1619
springer.lindsey65@gmail.com

25

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2021, I electronically filed Springer's

Objections to the Magistrate's Report and Recommendation dated August 24, 2021, and

brief in support, with the Clerk of Court's ECF System and the following person was

served through the Court's ECF System with these Objections on behalf of all Defendants

through the ECF System:


Tami C. Parker, Counsel for all Defendants


/s/Lindsey K. Springer
Server

26