IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LINDSEY KENT SPRINGER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No. 3:20-CV-3088-B (BH) |
| | ) | |
| **UNITED STATES OF AMERICA, et al.,** | ) | |
| **Defendants.** | ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, *Plaintiff's Motion for Costs of Filing Fees*, received on November 17, 2021 (doc. 37), should be denied.

**I. BACKGROUND**

On October 9, 2020, Lindsey Kent Springer (Plaintiff) filed this action based on his alleged exposure to asbestos and mold while working in a warehouse at the Federal Correctional Institution in Seagoville, Texas (FCI-Seagoville). (doc. 3 at 1). He sued the United States under the Federal Tort Claims Act (FTCA); Mark Christian, the former acting environmental and safety compliance administrator of FCI-Seagoville, and Ernesto Rosales, the former assistant warden of FCI-Seagoville in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and the Bureau of Prisons (BOP) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (collectively Defendants). All of his claims were ultimately dismissed on October 19, 2021. (docs. 31, 35, 36.) He now seeks to recover the $400.00 filing fee he paid, claiming that he is a prevailing party under FOIA. *See* 5 U.S.C. § 552(a)(4)(E).

Regarding his FOIA claim, Plaintiff alleged that on December 12, 2019, he submitted a

---

[1] By standing order of reference dated October 15, 2020, this *pro se* prisoner case has been referred for pretrial management, including all non-dispositive and case dispositive motions.

FOIA request to BOP. (doc. 3 at 19.)² On January 9, 2020, he received a response noting his request had been "assigned to the complex track and placed in chronological order based on the date of receipt." (doc. 3 at 81.) It also noted that "[p]rocessing complex requests may take up to nine months." (*Id.*) At the time Plaintiff filed this lawsuit, BOP had still not responded to his FOIA request, so he included a claim against BOP for failure to respond to his request within the "time allotted by Congress in violation of [FOIA]." (*Id.* at 32.) BOP was served with the complaint on December 7, 2020, and, on January 6, 2021, Plaintiff and counsel for Defendants agreed that responsive pleadings would be due by March 15, 2021. (*See* doc. 41 at 2.)

On January 11, 2021, BOP issued a letter responding to Plaintiff's FOIA request and produced "100 pages[,] 85 of which were blank, 9 of which were partially redacted, and 6 were released in full." (doc. 41 at 2.); *see also* (doc. 15-1 at 6.)³ It eventually moved to dismiss Plaintiff's complaint, arguing that his FOIA claim had been mooted by the agency's subsequent response to his FOIA request. (*See* doc. 14 at 5-6.) The Court agreed:

> A timeliness claim is rendered moot by an intervening response. *Id.* (citing *Voinche*, 999 F.2d at 963); *see also Velasquez v. Nielsen*, 754 F. App'x 256, 262 (5th Cir. 2018) ("The district court found that appellants' [FOIA] untimeliness claims were mooted by DHS's belated response in producing the requested information. This holding is correct.") (citations omitted). Plaintiff's FOIA claim is based entirely upon the timeliness of the record production and not its adequacy. In support of its motion,

---

²The request sought (1) "all records, all documents, and all information in its possession and control pertaining to the reports finding asbestos and mold in Storage 1 and 2 on October 10, 2018, October 18, 2018, and October 22, 2018, at the FCI-Seagoville Warehouse;" (2) "all records, all documents, and all information pertaining to any bids made for the purpose of abating from both Storage 1 and 2 at the warehouse at FCI-Seagoville the Asbestos and mold found therein;" and (3) "all records, all documents, and all information pertaining to ARC Abatement, including its bid, its invoices, and any certifications made by ARC Abatement, stemming from the abatement ARC Abatement performed between May 1, 2019, through May 14, 2019, involving Storage 1 and 2 at the Warehouse at FCI-Seagoville involving the asbestos and mold." (*Id.* at 19.)

³Plaintiff appealed the adequacy of that response, and during the pendency of this ligation, the U.S. Department of Justice remanded his request for further search of additional responsive records. (*See* doc. 30-1.) He contends that at the time he filed this motion for costs, BOP had still not provided additional documents. (doc. 41 at 3.)

2

>   the BOP has provided a declaration stating that it has now responded to Plaintiff's FOIA requests.

(doc. 31 at 18; doc. 35 at 7-9 (accepting the recommendation and further addressing the FOIA claim); doc. 36.)[4]

## II. ANALYSIS

Plaintiff argues that because BOP produced records after he filed it, his lawsuit caused the agency's response, and he is therefore a substantially prevailing party under FOIA entitled to costs. *See* 5 U.S.C. § 552(a)(4)(E).

**A.    Eligibility**

FOIA authorizes courts to grant attorneys' fees and costs in cases in which "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). A FOIA litigant "substantially prevails" by obtaining relief through either "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The latter–referred to by courts as the "catalyst theory"—may be establishing by showing that "prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information." *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980))*; see also Franklin v. United States*, Civil Action No. 3:20-CV-1303-N, 2021 WL 4458377, at *10 (N.D. Tex. Sept. 29, 2021) (citing 5 U.S.C. § 552(a)(4)(E)).

As noted by the Fifth Circuit, FOIA "divides the attorney-fee inquiry into two prongs[:]...fee

---

[4] On December 15, 2021, Plaintiff appealed the judgment dismissing his claims. (*See* doc. 40.) The notice of appeal does not deprive this Court of jurisdiction to consider collateral motions, such as Plaintiff's motion for costs, however. *See*, *e.g.*, *Kira Inc. v. All Star Maintenance., Inc.*, 294 F. App'x 139, 140-141 (5th Cir. 2008) (per curiam); *see also Salcedo v. Evanston Ins. Co.*, No. EP-10-CV-363-KC, 2011 WL 4499334, at *1 (W.D. Tex. Sept. 26, 2011) ("A motion for bill of costs is a collateral motion.")

eligibility and fee entitlement. The eligibility prong asks whether a plaintiff has substantially prevailed and thus may receive fees. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees." *Batton v. IRS*, 718 F.3d 522, 525 (5th Cir. 2013) (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)). These factors include (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records has a reasonable basis in law." *Id.* at 527.

Here, no judicial order compelled BOP to respond to Plaintiff's FOIA request, so he must demonstrate that his suit "had a substantive causative effect on the delivery of the information." *Lovell*, 630 F.2d at 432. BOP argues that Plaintiff cannot make this showing because it explained at the time it received his FOIA request that the request was complicated, and it might take up to nine months to respond. While it ultimately took longer than nine months to respond, and the response was made after Plaintiff filed suit, "the mere filing of a complaint and the subsequent release of the documents is insufficient to establish causation" under the catalyst theory. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *but see Electronic Privacy Information Center v. United States Department of Homeland Security*, 218 F.Supp.3d 27, 41 (D.D.C. 2016) ("While '[t]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation,' a significant delay by the agency in complying with FOIA may provide the 'inference that the agency forgot about, or sought to ignore, a FOIA requester's request—and in such a case an award of [FOIA] costs and fees would be appropriate.'") (citing *Weisberg*, 745 F.2d at 1496); *Harvey v. Lynch*, 178 F.Supp.3d 5, 7 (D.D.C. 2016)).

4

BOP argues that Plaintiff's case is similar to *Verde v. FAA*, 287 F.Supp. 3d 661, 669-70 (S.D. Tex. 2018), in which normal administrative processing explained the timing of the response. The plaintiff originally filed his FOIA request in May 2016; the agency made limited productions in June 2016 and February 2017, but it made a more substantial one in April 2017—after the plaintiff had filed a motion for summary judgment in his FOIA lawsuit. *Id*. at 664. The FAA argued that the plaintiff could not show his suit spurred it to act on his FOIA request because it "never changed its position or altered its conduct because of [his] lawsuit." *Verde*, 287 F.Supp.3d at 670. The court agreed. Noting cases in which courts refused to award FOIA fees or costs when the agency's response was due to the normal administrative processing of the request and not because of the filing of suit, the court observed that "the FAA was facing an administrative backlog, and it notified Verde early on that his appeal would take time to process. It also experienced delays due to the unintentionally voluminous scope of Verde's original request. The FAA's internal appeals process eventually resolved the issue, and the workings of that process explain the FAA's April 2017 production at least as well as does the filing of Verde's summary judgment motion." *Id.* at 670 (citing *Weisberg,* 745 F.2d at 1476; *Gahagan v. USCIS*, No. 14-1268, 2015 WL 6738537, at *1, 3 (E.D. La. Nov. 4, 2015)).

BOP also relies on *Gahagan*, in which the court refused to apply the catalyst theory because the agency had notified the plaintiff that his request would be handled on a "first-in, first-out basis," and that due to the complexity of the request, it had been placed in "track 2." 2015 WL 6738537 at *1, 3. The plaintiff was made aware that his request was number 5,020 out of 12,386 FOIA requests pending with the agency at the time he filed his FOIA lawsuit, only one month after he submitted his FOIA request. *Id.* The agency turned over the requested documents slightly more than two

5

months after the original FOIA request, and slightly more than a month after the plaintiff commenced his suit. *See id.* at *3. The court found that the plaintiff presented no evidence that the agency's "ultimate disclosure of the requested documents resulted from the filing of his lawsuit, rather than merely [the agency's] ability to overcome administrative problems." *Id.*

Plaintiff argues that the time line establishes the required causal connection. (*See* doc. 41 at 6.) According to him, the nine months that BOP said it would take to respond began on December 19, 2019, when it received the request. It did not respond until January 11, 2021—nearly thirteen later, after it had obtained an extension to file a responsive pleading, and more than three months after Plaintiff filed this suit. He also contends that no evidence supports BOP's assertion that "[his] request was placed in a cue and documents were provided after a search and review." (doc. 41 at 7 (quoting doc. 39 at 5).)

Ultimately, Plaintiff bears the burden of proof on this issue. *See Conservation Force v. Jewell*, 160 F.Supp.3d 194, 202 (D.D.C. 2016) (noting that it is the plaintiff's burden to show that the catalyst pathway applies) (citing *Dorsen v. SEC*, 15 F.Supp.3d 112, 118 (D.D.C. 2014)). The question is whether "hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief."*Id*. at 205. Plaintiff has failed to provide any. He has not shown that BOP denied his request before he filed suit and then changed its position. *See id.* at 206 (holding that the plaintiff had not shown it "substantially prevailed" because despite the agency's production of documents after the plaintiff sued, "[n]o averments or other facts in the instant record indicate [the agency] only produced [them because of the] lawsuit," and there was no "about-face" from an initial agency refusal).

While BOP overshot its initial nine-month estimate of time to respond, it initially

6

characterized Plaintiff's claim as complex and noted a lengthy response time rather than denying the request outright, which makes this case more like *Verde* and *Gahagan* than the cases in which courts found the required causation. *See*, *e.g.*, *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1388-89 (5th Cir. 1985) (holding that the plaintiff "substantially prevailed" where the defendant repeatedly stated it possessed few or no responsive documents until the plaintiff sued); *Dorsen v. SEC*, 15 F.Supp.3d 112, 115-16, 119-20 (D.D.C. 2014) (holding that the plaintiff "substantially prevailed" where the agency reversed its position on exemptions after the lawsuit was filed and provided the information); *Judicial Watch, Inc. v. DOJ*, 878 F.Supp.2d 225, 232-33 (D.D.C. 2012) (catalyst pathway applied where agency admitted that, "[i]n the course of preparing [its] Motion for Summary Judgment[,]" it determined that the sought-after information could be released, months after "it had ceased its administrative proceeding and issued a final determination concerning [plaintiff's] [FOIA] request[.]") (first two alterations in the original). Plaintiff has not shown that he "substantially prevailed," and he is therefore ineligible for an award of costs under FOIA.

**B.**   **Entitlement**

Even if Plaintiff could show eligibility for attorney fees, he fails to show entitlement. As noted, this is evaluated by balancing (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records has a reasonable basis in law." *Batton*, 718 F.3d at 527.

The public benefit factor has been described as "perhaps the most important factor in determining entitlement to a fee award." *Hernandez v. U.S. Customs and Border Protection Agency*, Civil Action No. 10-4602, 2012 WL 398328, at *8 (E.D. La. Feb. 7, 2012) (citation omitted). The

7

"Fifth Circuit has said that the first factor supports an award 'where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.'" *Verde*, 287 F.Supp.3d at 671 (citing *Blue v. Bureau of Prisons*, 570 F.2d 529, 533-34 (5th Cir. 1978)). Courts have also focused on whether the requested records will be widely disseminated and the likely public impact that might be expected from disclosure of the documents. *See*, *e.g.*, *Blue*, 570 F.2d at 533 (discussing the "public benefit" factor and noting that the "Senate Report's discussion of this criterion referred repeatedly to disclosure to the press and to public interest organizations, thus strongly suggesting that in weighing this factor a court should take into account the degree of dissemination and likely public impact that might be expected from a particular disclosure") (citing S. Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)).

Here, there is no indication that the records released to Plaintiff will be widely disseminated or "add to the fund of information that citizens may use in making vital political choices." *Verde*, 287 F.Supp.3d at 671 (citation omitted). Plaintiff argues that the "[t]he public would surely like to know how its prisoners are being treated and this is especially true when it is their health and safety while in custody." (doc. 41 at 8.) The records Plaintiff sought relate only to a warehouse at one federal prison, however; they are not indicative of how federal prisoners are generally being treated. *See Polynesian Cultural Center, Inc. v. N.L.R.B.*, 600 F.2d 1327, 1330 (9th Cir. 1979) (finding no public benefit where the records obtained "dealt with a limited, local, routine labor dispute; [because] disclosure was unlikely to result in widespread dissemination, or substantial public benefit"). Further, by his own admission, Plaintiff obtained only 100 pages, "85 of which were blank, [and] 9 of which [that] were partially redacted..." (doc. 41 at 2.) He does not explain what information in this limited production benefits the public. *See*, *e.g.*, *McKinley v. Federal Housing*

8

*Finance Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) ("The district court found that this first factor 'strongly counsels' against awarding fees, reasoning that the two documents McKinley ultimately obtained were so heavily redacted that they contributed only 'scant' information to the public record. We detect no abuse of discretion in that finding.") (citation omitted) This factor does not weigh in his favor.

As for the second and third factors—the commercial benefit to Plaintiff and the nature of the his interest in the records—"the Fifth Circuit has said that they reflect 'a preference for public interest groups, indigents and disinterested scholars over private commercial enterprises' efforts for disclosure.'" *Verde,* 287 F.Supp.3d at 672 (quoting *Blue*, 570 F.2d at 534). "This distinction is important because, in a suit 'to advance private commercial interests,' 'there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA.'" *Verde*, 287 F.Supp.3d at 671-72 (quoting *Fenster v. Brown*, 617 F.2d 740, 743 (D.C. Cir. 1979) (further citation omitted).

With those standards in mind, Plaintiff is not the kind of litigant who might need attorney fees or costs as an incentive to litigate his FOIA claim. He sought information–reports finding asbestos at FCI Seagoville—that might further his federal claims for asbestos exposure. He clearly has a personal interest in at least some of the information sought, and this interest is "sufficient to insure the vindication of the rights given in the FOIA." *Fenster*, 617 F.2d at 743.

Plaintiff argues that the "commercial benefit" factor favors him because medical professionals and contractors required to abate the "located asbestos" would receive a commercial benefit from disclosure of the information he sought. (doc. 41 at 8.) The "commercial benefit" factor

9

focuses on the commercial benefit to the plaintiff, however, and not third parties. *See Edelman v. Securities and Exchange Commission*, 356 F.Supp.3d 97, 104 (D.D.C. 2019) (characterizing the second factor as "the commercial benefit to the plaintiff"). He also claims that the FOIA litigation was not brought solely to further his own self interests, noting that several others were named in his complaint– including at least ten people directly exposed to the asbestos—who would also benefit from the "disclosure of the asbestos and mold at FCI Seagoville." (doc. 41 at 8.)  Plaintiff does not deny that he had a private interest in obtaining the records, and this personal interest sufficiently ensured that he would pursue his FOIA rights. The second and third factors weigh against him.

The fourth and final factor focuses on the agency's reasons for withholding documents. This factor will weigh in Plaintiff's favor if the "agency's nondisclosure was designed to avoid embarrassment or thwart the requester." *Blue*, 570 F.2d at 534. All that is required is a showing that the agency had a "colorable legal basis" for concluding that the information was exempt and that it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Fenster*, 617 F.2d at 744 (citation omitted). A withholding of documents is not at issue here: BOP did respond to Plaintiff's FOIA request with documents, and this Court specifically found that the adequacy of that response was an issue not properly before it. (*See* doc. 31 at 18-19.)  In this case, there is no "nondisclosure" to analyze.

Plaintiff argues that it was not reasonable for BOP to take as long as it did to respond to his request. (*See* doc. 41 at 9). To the extent that he is arguing that BOP's response was dilatory and that this indicates "obdurate behavior," his claim is not supported by the record. Although it took more time to respond that it initially said it needed, it is at least as likely that this delay was caused by the complexity of the request—which BOP highlighted at the start—than intentional obduracy. The

10

FOIA entitlement factors weigh against an award of filing-fee costs.

### III. RECOMMENDATION

Plaintiff has failed to show eligibility for, or entitlement to, costs under FOIA. His motion should be **DENIED**.

**SO RECOMMENDED** on this 28th day of January, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE